RENEE TAYLOR STEWART, PLAINTIFF v. CHARLES STEWART, DEFENDANT

No. COA99-1482

(Filed 29 December 2000)

**1. Appeal and Error— appealability—construction of premarital agreement—equitable distribution issues remaining**

A trial court order construing a premarital agreement and granting summary judgment on claims for postseparation support and alimony, and partial summary judgment on the equitable distribution of property addressed by the agreement, was immediately appealable even though it left undetermined the equitable distribution of property not identified in the agreement because it completely disposed of the gravamen of the issues raised.

**2. Divorce— premarital agreement—contract principles**

The North Carolina Uniform Premarital Agreement Act, N.C.G.S. § 52B-1 et seq., governs premarital agreements in North Carolina and alimony, postseparation support, and counsel fees may be barred by an express provision so long as the agreement is performed. Generally, contract construction principles apply to premarital agreements.

**3. Divorce— premarital agreement—waiver of alimony—language sufficiently express**

The language in a premarital agreement was sufficiently express to constitute a valid and enforceable waiver of a wife's claims for postseparation support and alimony.

STEWART v. STEWART

[141 N.C. App. 236 (2000)]

**4. Divorce— premarital agreement—waiver of retirement account rights—ERISA**

ERISA's spousal waiver restrictions apply to waivers of survivor benefits but do not apply to waivers of an interest in a spouse's retirement accounts.

**5. Divorce— premarital agreement—waiver of retirement account rights—state law**

A waiver of any rights in retirement accounts under a premarital agreement was valid under North Carolina law. North Carolina's version of the Uniform Premarital Agreement Act provides that the parties to a premarital agreement may contract with respect to the disposition of retirement accounts and the unambiguous language of the agreement in this case provides that the parties' retirement accounts are to remain their separate property.

**6. Divorce— premarital agreement—appreciation of medical license**

The trial court did not err in construing a premarital agreement by concluding that any appreciation in the husband's medical license during the marriage, active or passive, was the husband's separate property where the agreement provided that the parties would retain the title, management, and control of the property they owned and all increases or additions, and it was undisputed that the husband owned his medical license as his separate property at the time the agreement was executed.

**7. Divorce— premarital agreement—appreciation of interest in medical clinic**

The trial court did not err when construing a premarital agreement by concluding that any increase in the husband's interest in his medical clinic, active or passive, was to remain his separate property where it was undisputed that his interest in the clinic constituted his separate property when the agreement was executed and the language of the agreement evinces the parties' intent that any increases or additions to his interest in the clinic were to remain his separate property.

Appeal by plaintiff from judgment entered 2 July 1999 and order entered 5 August 1999 by Judge Spencer Byron Ennis in District Court, Alamance County. Heard in the Court of Appeals 18 October 2000.

*Vernon, Vernon, Wooten, Brown, Andrews & Garrett, P.A., by Wiley P. Wooten and Thomas R. Peake, II, for the plaintiff-appellant.*

*Wishart, Norris, Henninger & Pittman, P.A., by Pamela S. Duffy and Hillary D. Whitaker, for the defendant-appellee.*

WYNN, Judge.

Renee Taylor Stewart appeals from a 2 July 1999 trial court judgment concluding that she and her husband, Charles Stewart, waived claims for postseparation support, alimony, and certain property under a valid premarital agreement. She also appeals from a 5 August 1999 order holding that her husband's medical license is his separate property and therefore not subject to equitable distribution. We find no error.

On 25 June 1992, the marital parties signed a written Premarital Agreement under the North Carolina Uniform Premarital Agreement Act, N.C. Gen. Stat. §§ 52B-1 *et seq.* Neither party challenges the validity of the Agreement; rather, they dispute the interpretation of certain terms under the Agreement.

At the time of the parties' marriage in 1992, the husband held a medical license and owned an interest in Kernodle Clinic, a medical clinic. The parties separated in January 1998.

Pertinent to this appeal, in February 1998, the wife brought an action seeking postseparation support, alimony and equitable distribution. In response, the husband affirmatively pled that the terms of the Agreement barred his wife's claims for postseparation support, alimony and equitable distribution.

Following a motion hearing, the trial court granted summary judgment on 2 July 1999 in favor of the husband on the wife's claims for postseparation support and alimony. The trial court also granted to the husband partial summary judgment on his wife's claim for equitable distribution of certain property excluded by the terms of the agreement—the parties' respective retirement accounts and the husband's interest in Kernodle Clinic. The wife appeals to us from that 2 July 1999 judgment.

A second appealed from judgment arises from pretrial discovery issues. In March 1999, the wife served her husband with discovery requests, including interrogatories and a request for production of

documents, seeking information related to his medical license and his interest in Kernodle Clinic. In response, her husband opposed her discovery requests by moving for a protective order; and, he moved under N.C. Gen. Stat. § 50-20(i1) for a declaration that his medical license and interest in Kernodle Clinic were his separate property. On 5 August 1999, the trial court declared the husband's medical license to be his separate property and therefore not subject to equitable distribution. The trial court also denied the wife's motion to compel her husband to respond to the discovery requests concerning his medical license and the value of his interest in Kernodle Clinic. The wife appeals to us from that 5 August 1999 order.

[1] The wife first argues on appeal that the trial court erred under the 2 July 1999 order in construing the Agreement to waive her rights to postseparation support and alimony. Upon a careful review of the Agreement and the record as a whole, we find no error.

Under the 2 July 1999 order, the trial court granted the husband summary judgment only as to the wife's claims for postseparation support and alimony, and partial summary judgment on the wife's claim for equitable distribution regarding property specifically addressed by the Agreement—the parties' retirement accounts and the husband's interest in Kernodle Clinic. On appeal, the husband asserts that since this order leaves further matters to be judicially determined between the parties at the trial court level (i.e., the matter of equitable distribution of property not specifically identified in the Agreement), it is interlocutory and therefore not appealable. *See Rowe v. Rowe*, 131 N.C. App. 409, 410, 507 S.E.2d 317, 318 (1998). However, we hold that because the trial court's order completely disposed of the gravamen of the issues raised, the order is immediately appealable. *See Atassi v. Atassi*, 117 N.C. App. 506, 509, 451 S.E.2d 371, 373, *disc. review denied*, 340 N.C. 109, 456 S.E.2d 310 (1995) (citations omitted); N.C. Gen. Stat. § 1-277 (1996).

[2] The standard of review from summary judgment is "whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (citation omitted). To make this determination, "the evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Id.* Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c)(1990). Accordingly, the initial issue in this case is whether the Agreement irrefutably bars the wife's claims for postseparation support, alimony and equitable distribution.

The North Carolina Uniform Premarital Agreement Act governs premarital agreements in this state. N.C. Gen. Stat. §§ 52B-1 *et seq.* (1987 and Supp. 1996). The parties acknowledge that the Act governs their Agreement. *See* N.C. Gen. Stat. § 52B-5 (1987). Under the Act, a premarital agreement may be used by parties to contract as to "[t]he modification or elimination of spousal support." N.C. Gen. Stat. § 52B-4(a)(4) (1987). Elsewhere, N.C. Gen. Stat. § 50-16.6(b) provides that "Alimony, postseparation support, and counsel fees may be barred by an express provision of a valid separation agreement or premarital agreement so long as the agreement is performed." N.C. Gen. Stat. § 50-16.6(b) (1995).

Generally, principles of construction applicable to contracts also apply to premarital agreements. *Howell v. Landry*, 96 N.C. App. 516, 525, 386 S.E.2d 610, 615 (1989) (citing *Turner v. Turner*, 242 N.C. 533, 539, 89 S.E.2d 245, 249 (1955)), *disc. review denied*, 326 N.C. 482, 392 S.E.2d 90 (1990); *Hagler v. Hagler*, 319 N.C. 287, 294, 354 S.E.2d 228, 234 (1987) ("When the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court.") *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946) (citations omitted) (In interpreting contract language, the presumption is that the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean.)

In this case, Paragraph 13 of the Agreement provides:

Each of the parties forever waives, releases and relinquishes any right or claim of any kind, character, or nature whatsoever that either may have, or later acquire, in and to the estate, property, assets or other effects of the other party under any present or future law of any state; *and each of the parties forever waives, releases and relinquishes any right or claim that he or she now has, or may hereafter acquire, pursuant to the provisions of G.S. 28A, 29, 30, 31 and 50 as such sections now exist or may hereafter be amended,* or pursuant to any present or future law of the State of North Carolina.

STEWART v. STEWART

[141 N.C. App. 236 (2000)]

(Emphasis added). Chapter 50 of the North Carolina General Statutes encompasses divorce, alimony and child support. This includes N.C. Gen. Stat. §§ 50-16.2A and -16.3A, which provide for postseparation support and alimony, respectively. *See* N.C. Gen. Stat. §§ 50-16.2A, -16.3A (1995).

[3] The wife relies upon this Court's recent decision in *Napier v. Napier,* 135 N.C. App. 364, 520 S.E.2d 312 (1999), *disc. review denied,* 351 N.C. 358, —— S.E.2d —— (2000), to support her contention that the waiver provision in Paragraph 13 of the Agreement is vague and is therefore an unenforceable release of her rights to postseparation support and alimony. In *Napier,* at issue was a release term under a separation agreement that provided:

> L. *Mutual release*: Subject to the rights and privileges provided for in this Agreement, each party does hereby release and discharge the other of and from all causes of action, claims, rights or demands whatsoever, at law or in equity, which either of the parties ever had or now has against the other, known or unknown, by reason of any matter, cause or thing up to the date of the execution of this Agreement, except the cause of action for divorce based upon the separation of the parties.

135 N.C. App. at 365-66, 520 S.E.2d at 313. This Court concluded that this broad language was not sufficiently "express" to constitute a valid waiver of alimony under N.C. Gen. Stat. § 50-16.6(b), as it did not "specifically, particularly, or explicitly refer to the waiver, release, or settlement of 'alimony' or use some other similar language having specific reference to the waiver, release, or settlement of a spouse's support rights." *Id.* at 367, 520 S.E.2d at 314. The wife argues in the instant case that the waiver provision in Paragraph 13 of the Agreement is likewise overly ambiguous. We disagree.

Whereas the waiver in *Napier* was a mere blanket release of "all causes of action, claims, rights or demands whatsoever, at law or in equity," the waiver provision in Paragraph 13 of the Agreement in this case specifically and unambiguously waives all rights pursuant to Chapter 50 of the North Carolina General Statutes, which explicitly encompasses postseparation support and alimony. We, therefore, conclude that the language in the subject Agreement—drafted by the wife's attorney—was sufficiently "express" to constitute a valid and enforceable waiver of the wife's claims for postseparation support pursuant to N.C. Gen. Stat. § 50-16.2A and alimony pursuant to N.C. Gen. Stat. § 50-16.3A.

**[4]** The wife next argues that the trial court erred in concluding in the 2 July 1999 judgment that the parties waived any rights to each other's retirement accounts under the terms of the Agreement. The wife asserts that the Agreement was ineffective to waive the parties' interests in each other's retirement accounts as the Agreement failed to comply with the waiver requirements of the federal Employee Retirement Income and Security Act (ERISA). *See* 29 U.S.C.A. §§ 1001 *et seq.* (1999). We find no error.

The question presented, whether rights to retirement account benefits may be waived pursuant to a valid premarital agreement in light of ERISA, is one of first impression for our state courts. However, although not directly on point, the United States Court of Appeals for the Fourth Circuit addressed a similar issue in *Estate of Altobelli v. International Bus. Machines Corp.*, 77 F.3d 78 (4th Cir. 1996). In that case, the Fourth Circuit considered whether the ex-spouse of a participant in an ERISA-governed plan could waive her interest as a beneficiary in any pension-plan proceeds pursuant to a valid separation agreement incorporated into a divorce decree. ERISA's anti-alienation clause stated that "[e]ach pension plan shall provide that benefits under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (1988). IBM argued that its pension plans comply with this ERISA requirement, and that this language prohibits a pension-plan beneficiary from waiving his or her benefits. 77 F.3d at 80-81. Noting a split among several circuits as to whether the anti-alienation clause of ERISA applies to a waiver of benefits by a beneficiary, the Fourth Circuit agreed with the Seventh Circuit, concluding that the anti-alienation provision does not apply to a beneficiary's waiver, but instead applies only to waivers by a plan participant. *Id.* at 81 (citing *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 280-81 (7th Cir.) (*en banc*), *cert. denied*, 498 U.S. 820, 112 L. Ed. 2d 41 (1990) (finding that a nonparticipant beneficiary may waive her benefits pursuant to specific language in a divorce settlement); *cf. Lyman Lumber Co. v. Hill*, 877 F.2d 692, 693-94 (8th Cir. 1989) (holding, without addressing the anti-alienation clause, that an ex-spouse beneficiary can waive her pension benefits in a divorce settlement if the waiver specifically refers to and modifies the beneficiary interest); *Metropolitan Life Ins. Co. v. Hanslip*, 939 F.2d 904, 907 (10th Cir. 1991) (holding, without construing the anti-alienation clause, that the beneficiary designation on file with the plan administrator controls only in the absence of a divorce decree which dictates otherwise)); *but see McMillan v. Parrott*, 913 F.2d 310, 311-12 (6th Cir. 1990) (holding that a divorce settlement may

not waive a beneficiary's pension plan benefits, as the plan administrator is only to consider the designation on file); *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 16 (2d Cir. 1993) (stating that it would be counterproductive to require the plan administrator to delve into state law concerning domestic relations to determine plan beneficiaries). The Fourth Circuit found in *Altobelli* that an interpretation of the anti-alienation provision which allows for a waiver of benefits by a beneficiary pursuant to a separation agreement comports with the purpose of the clause, which is " 'to safeguard a stream of income for pensioners (and their dependents) . . . ).' " 77 F.3d at 81 (quoting *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376, 107 L. Ed. 2d 782, 795 (1990)).

While neither North Carolina nor the Fourth Circuit has directly addressed whether retirement account benefits may be waived under a premarital agreement, other state courts have addressed that question and concluded that rights to pension benefits may be waived under a valid premarital agreement.

In *Ryan v. Ryan*, 659 N.E.2d 1088 (Ind. Ct. App. 1995), the Court of Appeals of Indiana considered a premarital agreement wherein, as in the instant case, the parties purportedly agreed that any property owned by the individual parties prior to the marriage, or which was purchased, accumulated or acquired separately during the marriage, would remain the separate property of the individual parties. The trial court in *Ryan* concluded that the premarital agreement further provided that the husband's separate property included his pension benefits which existed prior to the marriage, as well as those benefits which accrued during the marriage. *Id.* at 1094. Therefore, those pension benefits were the separate property of the husband and his wife had no claim thereto. *Id.*

In *Ryan*, at the time of the parties' marriage in 1971, pension rights were not included within the definition of marital property under Indiana law. *Id.* In 1980, however, the Indiana legislature amended the statutory definition of property in dissolution actions to include the right to withdraw retirement or pension benefits and vested benefits. *Id.* (citing Ind. Code § 31-1-11.5-2(d) (1993)). The wife argued that she could not have waived her spousal interest in her husband's vested retirement benefits, as her statutorily-created interest was not in existence at the time the premarital agreement was executed in 1971. *Id.* The Indiana Court of Appeals rejected this argument, finding that the premarital agreement made clear the parties' intention to exclude their individual assets, including pension

benefits, from the definition of marital property. *Id.* at 1095. As the parties' intentions concerning their separate property was clear, and they acknowledged in the agreement that they would be bound by Indiana law, including a waiver of their statutory rights thereunder, the court found the wife's argument to be without merit. *Id.* The court also distinguished the Seventh Circuit's decision in *Pedro Enters., Inc. v. Perdue*, 998 F.2d 491 (7th Cir. 1993), finding that the wife in *Ryan* could point to no statutory requirements for the waiver of pension rights. *Ryan*, 659 N.E.2d at 1095; *see Pedro Enters., Inc.* (holding that premarital agreement did not waive surviving spouse's rights in deceased husband's pension plan where waiver did not comply with ERISA's waiver requirements).

In *Moor-Jankowski v. Moor-Jankowski*, 222 A.D.2d 422 (N.Y. App. Div. 1995), the New York Supreme Court, Appellate Division, Second Department, considered a premarital agreement much like the one at issue in the instant case. There,

> the parties entered into an antenuptial agreement prepared by the plaintiff's attorney which provided that each party was to retain absolute ownership of his or her separate property, including increments in such property which were "a direct result of the personal efforts, skills, or services of the party owning said assets". Each party waived any right "which he or she may acquire in the separately owned property, whether now owned or hereafter acquired, of the other by reason of such marriage".

222 A.D.2d at 422. Prior to trial in that case on issues of equitable distribution, the trial court granted partial summary judgment to the husband on the basis of the premarital agreement, dismissing the wife's claim for equitable distribution insofar as it concerned the husband's retirement funds. *Id.* As in the instant case, the wife argued on appeal that the premarital agreement was unenforceable as it failed to comply with the spousal consent provisions of ERISA. *Id.* at 423; *see* 29 U.S.C. § 1055(c)(2)(A) (1999). The New York Supreme Court, Appellate Division, found this contention to be without merit, stating that ERISA's spousal consent provisions only "apply to the plan participant's *current* spouse." *Moor-Jankowski*, 222 A.D.2d at 422 (emphasis added). The court concluded that the husband's pension benefits which had accrued prior to the marriage, as well as those which accrued following the commencement of the matrimonial action, constituted his separate property. *Id.* Moreover, as the wife had waived any claim to the husband's pension benefits accruing dur-

ing the marriage pursuant to the unambiguous terms of the premarital agreement, the trial court's entry of partial summary judgment as to the husband's retirement funds was found to be proper. *Id.*

More recently, in *Edmonds v. Edmonds*, 710 N.Y.S.2d 765 (N.Y. Sup. Ct. 2000), the New York Supreme Court, Onondaga County, construed a provision in a valid premarital agreement which stated that the husband and wife each retained the right to dispose of all property which he or she "now owns or is possessed of, or may hereafter acquire, or receive, as his or her own absolute property in like manner as if he or she had remained unmarried." *Edmonds*, 710 N.Y.S.2d at 767. The court noted that the husband, who sought a determination that his wife's pension and deferred compensation plan were marital assets subject to distribution, was represented by counsel in connection with the premarital agreement, while the wife, who brought the divorce action, had specifically acknowledged and waived her right to counsel. *Id.* The husband in that case contended that ERISA provides that spousal benefits can only be effectively waived by a spouse; as he was not the spouse of the plaintiff at the time the premarital agreement was signed, the husband argued that the purported waiver was invalid. *Id.* The husband in that case further contended that the waiver failed to comply with ERISA's specific waiver requirements, and was therefore invalid. *Id.* at 767-68. The New York court noted that ERISA was enacted in 1974 and amended effective 1 January 1985 by the Retirement Equity Act of 1984 (REA), which added a "requirement that all qualified pension plans provide automatic benefits to surviving spouses in the form of a survivor's annuity (Pub. L. No. 98-397, 98 Stat. 1426 (1984)." *Id.* at 768. The REA also outlined the strict requirements for the waiver of such benefits. *See* 29 U.S.C. § 1055(c)(1), (2). The court noted that, "Apart from the survivor benefit of REA, ERISA does not mandate that other benefits be provided to a participant's spouse. *In fact, ERISA expressly prohibits alienation of benefits by the plan participant,*" other than pursuant to a qualified domestic relations order pursuant to 29 U.S.C. § 1056(d). *Edmonds*, 710 N.Y.S.2d at 768 (emphasis added).

The court in *Edmonds* rejected the contentions of the husband in that case, stating that his argument failed to recognize "the distinction between his interest in [his wife's] pension as created by REA, the waiver of which is restricted by 29 U.S.C. § 1055(c)(2) [i.e. survivorship benefits], and his interest in [his wife's] pension as marital property" pursuant to applicable state law. *Id.* at 769. Citing the decision in *Moor-Jankowski*, the New York court in *Edmonds* concluded

that "spousal benefits" under ERISA are limited to survivor benefits, and that the waiver restrictions of 29 U.S.C. § 1055(c)(2) are likewise limited to survivor benefits. 710 N.Y.S.2d at 770. That is, the spousal benefit waiver requirements outlined in 29 U.S.C. § 1055(c)(2) do not apply to a waiver of an interest in a spouse's pension plan(s) as such interest arises under state law. *Id.* The court quoted a Colorado state court decision, stating:

> "[w]hile we recognize that a waiver of spousal death benefits in a prenuptial agreement is not effective when the spouse later dies while the parties are still married, ERISA does not, in our view, preempt or preclude the recognition, implementation or enforcement of an otherwise valid prenuptial agreement with regard to, as here, a dissolution of marriage proceeding."

*Id.* (quoting *In re Marriage of Rahn*, 914 P.2d 463, 468 (Colo. Ct. App. 1995)).

We find the logic of *Moor-Jankowski*, *Edmonds* and *In re Rahn* persuasive. As in *Edmonds*, the federal court cases cited by the wife in the instant case in opposition to the enforcement of the premarital agreement are inapposite as they concern the payment of *survivor* benefits after the death of the plan participant while the parties were still married. *See Hurwitz v. Sher*, 982 F.2d 778 (2d Cir. 1992) (holding that a premarital agreement which failed to comply with 29 U.S.C. § 1055 was ineffective to waive spousal *death* benefits), *cert. denied*, 508 U.S. 912, 124 L. Ed. 2d 255 (1993); *National Auto. Dealers and Assocs. Retirement Trust v. Arbeitman*, 89 F.3d 496 (8th Cir. 1996) (holding that a premarital agreement failing to comply with ERISA's spousal waiver requirements was insufficient to waive spouse's rights to *survivor* annuity benefits under deceased spouse's pension plans); *Pedro Enters., Inc.*, 998 F.2d 491. We conclude that ERISA's spousal waiver restrictions in 29 U.S.C. § 1055(c)(2) apply to waivers of survivor benefits but do not apply to waivers of an interest in a spouse's retirement account(s) as in the case at bar. *See Edmonds*, 710 N.Y.S.2d 765.

Paragraph 4 of the Agreement in the case at bar states:

> The parties herein agree that any and all retirement accounts, including but not limited to, pensions, annuities, IRAs, Keoghs, etc., owned prior to the marriage, or obtained after the marriage, is and shall remain the sole and separate property of the individual in whose name the account is titled. The parties herein agree

that neither will make claim on any of the retirement accounts held by the other, whether acquired prior to the marriage or subsequent to the marriage.

Having determined that this waiver was not subject to the spousal waiver requirements of ERISA, we must now turn to the question of whether the purported waiver was effective under our state law.

[5] As previously noted, North Carolina's version of the Uniform Premarital Agreement Act provides that the parties to a premarital agreement may contract respecting the disposition of their property upon separation or marital dissolution. N.C. Gen. Stat. § 52B-4(a)(3). The Act defines "property" as "an interest, present or future" in "property, including income and earnings." N.C. Gen. Stat. § 52B-2(2) (1987). The official comment to N.C. Gen. Stat. § 52B-2 states that the term "property" is intended to encompass "all forms of property and interests therein," including pension and retirement accounts. *Id.* Under the language of the Act, the parties to a premarital agreement may contract therein with respect to the disposition of retirement accounts. The unambiguous language of Paragraph 4 of the Agreement in this case provides that the parties' retirement accounts are to remain their separate property. We find that this waiver was valid under our state law as well as ERISA, and the wife's second assignment of error is therefore overruled.

[6] In her third assignment of error, the wife contends that the trial court erred in concluding that any active appreciation to her husband's interest in Kernodle Clinic and in his medical license acquired during the marriage was his separate property not subject to equitable distribution, pursuant to the terms of the Agreement. Both with respect to the husband's interest in Kernodle Clinic as well as his interest in his medical license, we find no error.

This Court will not disturb a trial court's determination that certain property is to be labeled separate property as long as there is competent evidence to support that determination. *Holterman v. Holterman,* 127 N.C. App. 109, 113, 488 S.E.2d 265, 268 (citation omitted), *disc. review denied,* 347 N.C. 267, 493 S.E.2d 455 (1997). On appeal, we review the record to determine whether the trial court's findings of fact are supported by any competent evidence, regardless of the existence of evidence which may support a contrary finding. *Mrozek v. Mrozek,* 129 N.C. App. 43, 48, 496 S.E.2d 836, 840 (1998) (quoting *Lawing v. Lawing,* 81 N.C. App. 159, 162, 344 S.E.2d 100, 104 (1986)).

The Act provides that a premarital agreement may be used to contract with respect to "[t]he rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located." N.C. Gen. Stat. § 52B-4(a)(1). Thus, the husband's interest in Kernodle Clinic and his medical license, including any appreciation thereto (whether active or passive) acquired during the marriage, was not an invalid subject of the Agreement under the Act. We must determine, however, whether the language of the Agreement was sufficient to waive the wife's interest in any appreciation accrued during the marriage to either the husband's interest in Kernodle Clinic or his medical license, such that any such appreciation became the separate property of the husband not subject to equitable distribution.

As to the defendant's medical license, N.C. Gen. Stat. § 50-20(b)(2) defines "separate property" for purposes of equitable distribution to include "[a]ll professional licenses" and states that "[t]he increase in value of separate property and the income derived from separate property shall be considered separate property." N.C. Gen. Stat. § 50-20(b)(2); see Poore v. Poore, 75 N.C. App. 414, 423, 331 S.E.2d 266, 272 (holding that a license to practice dentistry is the licensee's separate property pursuant to N.C. Gen. Stat. § 50-20(b)(2)), disc. review denied, 314 N.C. 543, 335 S.E.2d 316 (1985); Caudill v. Caudill, 131 N.C. App. 854, 855, 509 S.E.2d 246, 248 (1998) (holding that separate property not considered for purposes of marital asset distribution includes income derived from and increases in the value of separate property).

Nonetheless, as the wife correctly notes, our courts distinguish between "active" and "passive" appreciation of separate property. "Active appreciation refers to financial or managerial contributions of one of the spouses to the separate property during the marriage; whereas, passive appreciation refers to enhancement of the value of separate property due solely to inflation, changing economic conditions or other such circumstances beyond the control of either spouse." O'Brien v. O'Brien, 131 N.C. App. 411, 420, 508 S.E.2d 300, 306 (1998) (citations omitted), disc. review denied, 350 N.C. 98, 528 S.E.2d 365 (1999). This Court has held that any increase in the value of separate property "is presumptively marital property unless it is shown to be the result of passive appreciation." Conway v. Conway, 131 N.C. App. 609, 616, 508 S.E.2d 812, 817 (1998) (citation omitted), disc. review denied, 350 N.C. 593, —— S.E.2d —— (1999).

Paragraph 14 of the Agreement in this case provides that "[e]ach of the parties shall retain the title, management and control of the property or estate now owned by each of them, *and all increase or addition thereto*" (emphasis added). It is undisputed that at the time the Agreement was executed the defendant solely owned his medical license as his separate property. In the 5 August 1999 order, the trial court made the finding that "[t]he defendant owned his medical license prior to the marriage. The medical license is titled in the name of the defendant and is his separate property." The trial court then concluded that, "Under the terms of the Pre-Marital Agreement, the defendant's medical license is the defendant's separate property including any increases and additions thereto. This is the case whether those increases or additions are active or passive." We find that this conclusion of law is supported by the trial court's findings of fact, which in turn are supported by competent evidence in the record, including the plain language of the Agreement. As such, the trial court did not commit error in concluding as a matter of law that the husband's medical license, including any increases or additions thereto, whether active or passive, constituted his separate property.

[7] As to the husband's interest in Kernodle Clinic, the parties do not dispute that the husband's interest in the clinic as of the date of execution of the Agreement constituted his separate property. Paragraph 2 of the Agreement specifically acknowledged that the husband "is the owner of . . . (a) A vested interest in Kernodle Clinic." Paragraph 3 of the Agreement states the parties' agreement that "the property as set forth above is and shall remain the sole and separate property of each of the parties and that neither shall claim an interest in the property of the other . . . ." In Paragraph 5 of the Agreement, the parties agree further "that any interest which [the husband] may obtain in a private practice similar to the interest he currently owns in Kernodle Clinic, shall be his sole and separate property and [the wife] shall have no interest therein or make any claim thereon."

In the 2 July 1999 judgment, the trial court made the finding that the property specifically addressed in the Agreement was not subject to equitable distribution, which property specifically included the "defendant's interest in Kernodle Clinic or any private practice similar to the interest he holds in Kernodle Clinic, . . . and all increases and additions thereto . . . ." The trial court concluded that "the defendant's entire interest in Kernodle Clinic including any interest acquired during the marriage is the separate property of the defend-

ant" pursuant to the terms of Paragraphs 2, 3, 5 and 14 of the Agreement. We find that the language of Paragraphs 2, 3 and 5, in conjunction with the language of Paragraph 14 quoted above, evinces the parties' intent that any increases or additions to the husband's interest in Kernodle Clinic, whether active or passive, were to remain his separate property. The trial court's conclusion regarding the husband's interest in Kernodle Clinic is supported by its findings of fact, which are supported by competent evidence in the record. The wife's third assignment of error is therefore overruled.

As the parties do not dispute the existence and validity of the Agreement, we conclude that the trial court committed no error in construing the Agreement and finding that there existed no genuine issue of material fact as to the issues of postseparation support, alimony and the defendant's retirement accounts. Having carefully reviewed the record, we further conclude that the trial court committed no error in its conclusions of law and findings of fact in the 2 July 1999 judgment and 5 August 1999 order with respect to the defendant's medical license and interest in Kernodle Clinic. The 2 July 1999 judgment and the 5 August 1999 order entered by the trial court are therefore,

Affirmed.

Judges LEWIS and HUNTER concur.