MARCUS COOKE, Plaintiff-appellant v. SUSAN COOKE, Defendant-appellee

No. COA06-1083

(Filed 7 August 2007)

**1. Divorce— equitable distribution—antenuptial agreement—interpretation**

The trial court did not err in an equitable distribution case by interpreting the language of an antenuptial agreement so that a notice requirement applied to one paragraph only.

**2. Divorce— equitable distribution—post-separation mortgage payments—reimbursements**

The trial court was within its discretion in an equitable distribution case in requiring that defendant be reimbursed for post-separation mortgage payments made while plaintiff was in exclusive possession of the marital home.

**3. Divorce— equitable distribution—post-separation mortgage payments—non-divisible property**

The trial court erred in an equitable distribution action by characterizing post-separation mortgage payments as a distribution of divisible property. However, a remand was not necessary

because the trial court had the authority to reimburse defendant for those payments.

### 4. Divorce— equitable distribution—post-separation mortgage payments

The trial court did not err in an equitable distribution action by determining that reimbursement of post-separation mortgage payments was equitable. The payments were not divisible property and the court was not required to consider the statutory factors concerning whether the payments were equitable.

Appeal by plaintiff from orders entered 26 September 2002 and 5 January 2006, and order and judgment entered 31 March 2006 by Judge Charles T.L. Anderson in Orange County District Court. Heard in the Court of Appeals 15 March 2007.

*Judith K. Guibert for plaintiff-appellant.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Adrienne Allison, for defendant-appellee.*

ELMORE, Judge.

Marcus Cooke (plaintiff) and Susan Cooke (defendant) were married on 14 February 1991, separated on 25 June 2001, and divorced on 3 December 2002. On the date of their marriage, the parties signed an antenuptual agreement (the agreement), which was drafted by plaintiff's counsel. The parties executed the agreement in Tennessee, the state in which they were married.

In relevant part, the agreement states:

2. Property Rights. After the marriage between the parties, each of them shall separately retain all respective rights in his or her own property disclosed and listed in Exhibits "A" and "B", including any appreciation thereon and including[1] property acquired during the marriage with the proceeds of such separate property (as listed in Exhibits "A" and "B") and separate property acquired during the marriage that each, after giving notice to the other, shall segregate and maintain as his or her separate property. Each

---

1. The words "and including," which immediately precede this footnote, were written in by hand on the original document. It appears that both parties initialed the page, thereby approving this addition. Neither party objects to the words' inclusion, and we therefore read "and including" to be original to the text of the agreement.

of them shall have the absolute and unrestricted right to dispose of their own property including the proceeds from the disposition of any property or the reinvestment of such proceeds, free from all claims that may be made by the other by reason of their marriage, and with the same effect as if no marriage had been consummated between them.

3. Disposition of Property. Each party hereto may freely sell or otherwise dispose of his or her own property, whether listed in Exhibits "A" and "B" or property acquired during the marriage, designated and segregated by such party as his or her separate property including any appreciation thereon, and including the proceeds . . . .

4. Property and Disposition During Marriage. Each party during his or her lifetime shall keep and retain sole ownership, control and enjoyment of his or her own property whether listed in Exhibit "A" and "B" or property acquired during the marriage, designated and segregated by such party as his or her separate property including any appreciation thereon, and including the proceeds from the disposition of any such property or the reinvestment of such proceeds free and clear of any claim by the other arising out of the marriage of the parties . . . .

* * *

6. Relinquishment of Right to Inherit. With regards to the property set forth in Exhibit "A" and "B", and any other property acquired during the marriage designated and segregated by such party as his or her separate property and any appreciation on such properties, and including the proceeds from the disposition of any such property or the reinvestment of such proceeds, each party hereby releases and relinquishes to the other . . . and is hereby forever barred from any and all rights, interests, or claims by way of past, present and future support, division of property, right of dower, inheritance, descent, distribution, allowance for support, and all . . . rights or claims whatsoever, in or to the aforementioned property of the other, whether real or personal, which may, in any manner, arise or accrue by virtue of said marriage.

Plaintiff's assets owned prior to marriage were listed in Exhibit A and defendant's assets owned prior to marriage were listed in Exhibit B. Defendant listed her investment assets, valued at $57,436.00, which

included tax-free bonds with a value of $4,870.00, individual retirement accounts with a value of $7,398.00, qualified retirement plans with a value of $4,888.00, and other investments with a value of $40,280.00. Defendant also listed bonds and stocks/stock options with values of $0.00. At the time the parties separated, plaintiff had a net worth of $492,794.00 and defendant had a net worth of $1,232,169.00. Included in defendant's net worth were marketable securities with a value of $452,458.00 and a retirement account with a value of $544,000.00.

The parties relocated to North Carolina during their marriage, and purchased a home in Chapel Hill (the marital home). The mortgage on the marital home was in defendant's name only.

After the parties separated in 2001, plaintiff continued to reside in the marital home, and defendant purchased a second home in which she lived with the parties' daughter. Plaintiff exclusively occupied the marital home after June, 2001, but did not pay the mortgage in September, October, and December of 2001. He paid half the mortgage in November of 2001. Defendant paid a total of $11,959.00 in mortgage payments after her separation from plaintiff and while plaintiff had exclusive possession of the marital home. The trial court calculated that defendant received a tax benefit of $1,151.35 in reduction of her tax liability for 2001 as a result of those mortgage payments.

By consent order entered 14 December 2001, the parties agreed to list the marital home for sale, and a later order required plaintiff to make all subsequent mortgage payments on the marital home. Plaintiff made several offers to buy defendant's half interest in the marital home, and the parties ultimately agreed upon a price of $133,500.00.

Plaintiff's counsel then drafted a separation and property settlement agreement, which both parties executed on 18 February 2002. The property settlement agreement states that the parties agreed that the value of defendant's interest in the marital home was $133,500.00, and that plaintiff would pay defendant that amount in exchange for a quitclaim deed conveying her interest in the marital home to plaintiff. The property settlement agreement also states, in relevant part, "This Agreement as entered into between the parties shall not affect either parties' rights regarding the manner in which any prior payment relative to the [marital] residence should be treated in the pending equitable distribution action."

Plaintiff appeals three separate orders entered by Judge Anderson over the course of his litigation with defendant. We address each order individually.

26 September 2002 Order

Plaintiff first argues that the trial court erred by granting partial summary judgment to defendant in its 26 September 2002 order. On 10 May 2002, plaintiff moved for equitable distribution of "certain property which qualifies as marital property as defined by N.C.G.S. § 5-20 *et seq.*" Plaintiff asserted that, pursuant to the antenuptual agreement, all "property accumulated during the marriage (except property listed on the parties' exhibits and appreciation thereon, and property acquired during the marriage by inheritance or gift and maintained by a party as his or her separate property with notice of such intent) is marital property subject to equitable distribution." In response, defendant moved for partial summary judgment, which the trial court granted in its 26 September 2002 order. The trial court agreed with defendant that the "Antenuptual Agreement establishe[d] that the only property that was marital property and subject to distribution by [the trial court] was the marital residence and certain items of tangible personal property purchased through the parties' joint account." Defendant's investment property, including her retirement accounts, was therefore not subject to equitable distribution.

This appeal arises from a decree of partial summary judgment, and our review is therefore *de novo. Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004). "The trial court should grant summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *McCutchen v. McCutchen*, 360 N.C. 280, 285-86, 624 S.E.2d 620, 625 (2006) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005)). We consider the evidence "in a light most favorable to the non-moving party." *Howerton*, 358 N.C. at 470, 597 S.E.2d at 693. Our review entails a two-part analysis: "[s]ummary judgment is appropriate if (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784, 534 S.E.2d 660, 664 (2000).

COOKE v. COOKE

[185 N.C. App. 101 (2007)]

[1] Plaintiff urges us to reconsider the trial court's interpretation of the language of the antenuptual agreement. "The principles of construction applicable to contracts also apply to premarital agreements[.]" *Harllee v. Harllee*, 151 N.C. App. 40, 46, 565 S.E.2d 678, 682 (2002) (citations omitted). Plaintiff would have us read the notice requirement in Paragraph 2 as applying to the other paragraphs, effectively expanding the property that would fall into the pot of marital property subject to equitable division. Specifically, some or all of defendant's sizable investment portfolio would be subject to division.

When "interpreting contract language, the presumption is that the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Stewart v. Stewart*, 141 N.C. App. 236, 240, 541 S.E.2d 209, 212 (2000) (citing *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946)).

Our review of the antenuptual agreement rendered the same result as the trial court's review: that the notice requirement imposed in Paragraph 2 applies only to Paragraph 2 and not to the other paragraphs of the agreement. The word "notice" is used in Paragraph 2 and does not appear in Paragraphs 3, 4, and 6, which each address the disposition of "separate property." A plain reading of the agreement suggests that the parties intended the notice requirement only to apply to the particular category of rights addressed in Paragraph 2. "Notice" is simply not stated as a requirement in Paragraphs 3, 4, and 6 and there is no language that directs us to read "notice" into those paragraphs. Instead, we read Paragraphs 3, 4, and 6 as creating particular categories of rights for the disposition of property, entirely distinct from the rights created in Paragraph 2. We find no ambiguity in the language of the agreement, nor do we find that the trial court's construction of the document creates an absurd result. Accordingly, we affirm the order of the the trial court granting partial summary judgment.

5 January 2006 Order

[2] We turn next to plaintiff's appeal from the order entered 5 January 2006. This order resolved "defendant's claims against plaintiff for payments made against the mortgage for the benefit of plaintiff after separation," and granted defendant the right to recover a judgment of $10,807.65 from plaintiff.

"[T]he trial court is vested with wide discretion in family law cases, including equitable distribution cases." *Wall v. Wall*, 140 N.C. App. 303, 307, 536 S.E.2d 647, 650 (2000). "Thus, a trial court's ruling will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citations and quotations omitted). "[T]he law affords trial courts wide discretion in determining how to treat post-separation mortgage payments by one spouse. . . . A trial court may also give the payor a dollar for dollar credit in the division of the property, or require that the non-payor spouse reimburse the payor for an appropriate amount." *Hay v. Hay*, 148 N.C. App. 649, 655, 559 S.E.2d 268, 273 (2002) (citation omitted).

Here, the trial court was within its discretion to require plaintiff to reimburse defendant for post-separation mortgage payments that defendant made while plaintiff was in exclusive possession of the marital home. The property settlement agreement specifically stated that it did not affect how defendant's "prior payments" should be treated in the equitable distribution action, leaving the trial court wide latitude to determine the parties' rights with regard to those prior payments. Although plaintiff makes additional arguments that he overpaid for his half-interest in the property, he signed a property settlement agreement that states that he agreed to the price. We will not evaluate the fairness of the agreement's terms, and therefore do not address these arguments.

The trial court made twenty-five findings of fact before reaching its conclusion. These findings of fact are supported by competent evidence, and the conclusion is supported by these findings of fact. It is evident that the order was the result of a reasoned decision, and as such we affirm it.

31 March 2006 Order

[3] The trial court issued its final order and judgment on 31 March 2006. The order awards "judgment against Plaintiff in favor of Defendant in the amount of $10,807.65," which "judgment represents a distribution of the divisible property created by Defendant's post-separation payments of the indebtedness secured by the marital residence" while it was in plaintiff's exclusive possession. The court reasoned that it was equitable to distribute all of "said divisible property" to defendant because she paid it "with her separate funds, and it would be inequitable to distribute any of said divisible property to Plaintiff."

**COOKE v. COOKE**

[185 N.C. App. 101 (2007)]

Plaintiff correctly asserts that the trial court erred in categorizing the post-separation payments as "a distribution of divisible property." N.C. Gen. Stat. § 50-20(b)(4)(d) was amended in 2002 to expand the definition of "divisible property" to include decreases in marital debt. *See* N.C. Gen. Stat. § 50-20(b)(4)(d) (2005); *Warren v. Warren*, 175 N.C. App. 509, 516-17, 623 S.E.2d 800, 805 (2006). The amendment applies only to payments made after 11 October 2002. *Warren*, 175 N.C. App. at 517, 623 S.E.2d at 805. The payments pre-date the amendment and therefore do not fall within the statutory definition of "divisible property."

However, this error does not necessitate reversal or remand. As discussed above, the trial court had authority to reimburse defendant for her post-separation mortgage payments under *Hay*. Although we acknowledge the error, we need not remand.

**[4]** Plaintiff also argues that the trial court erred by determining reimbursement to defendant was equitable because N.C. Gen. Stat. § 50-20(c) requires a trial court to divide marital and divisible property equitably upon consideration of the factors listed therein. N.C. Gen. Stat. § 50-20(c) (2005). Because the post-separation mortgage payments were not "divisible property," the trial court was not required by section 50-20(c) to consider the statutory factors when considering whether payment was equitable. Instead, the trial court was only required to make a "reasoned decision," as in *Wall* and *Hay*, that defendant was entitled to reimbursement for the mortgage payments.

Accordingly, we affirm the orders of the district court.

Affirmed.

Judges McGEE and STEPHENS concur.