SUSAN E. SCHNEIDER
v.
DOUGLAS TAYLOR HOFF
No. COA07-1209
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Ferguson, Scarbrough & Hayes, P.A., by James E. Scarbrough and James R. DeMay, for Plaintiff-Appellant.
No brief for Defendant-Appellee.
STEPHENS, Judge.
At issue in this case is the classification and division of a $70,274.12 debt from an equity line of credit secured by a deed of trust lien against Plaintiff's home. We vacate and remand to the trial court with instructions to classify the specific withdrawals made on the equity line as separate or joint debts, and to distribute the debts pursuant to the parties' premarital agreement.

I. Background
On 31 January 2003, Plaintiff Susan E. Schneider and Defendant Douglas Taylor Hoff entered into a premarital agreement ("Agreement") establishing the procedure by which they would divide property upon a separation. The parties married on 1 February 2003 and separated on 27 March 2005. On 27 October 2005, Plaintiff filed a complaint for divorce from bed and board, post-separation support, alimony, and equitable distribution. On 9 January 2006, Defendant filed an answer asserting that the Agreement between the parties barred Plaintiff's claims.
The matter came to trial at the 13 March 2007 civil session of Cabarrus County District Court. The trial court dismissed Plaintiff's action for equitable distribution of the marital property because "the parties executed a Pre-Marital Agreement . . . in which they `specifically waived any claims or rights of equitable distribution of marital property'" arising out of N.C. Gen. Stat. § 50-20. The trial court also dismissed Plaintiff's claims for divorce from bed and board, post-separation support, and alimony as Plaintiff failed to present any evidence on these issues. As a consequence, the sole issue before the trial court was the classification and distribution of the assets and liabilities of the parties pursuant to the Agreement.

II. Assets and Liabilities
In 2001, Plaintiff purchased a home located at 6405 Deer Haven Drive in Mount Pleasant, North Carolina ("Property"). Only her name appears on the deed and the home has at all times been Plaintiff's separate property. Plaintiff granted Countrywide Home Loans ("Countrywide") a first mortgage when she bought the Property. During the marriage, the parties lived together on the Property. Shortly after the marriage, Plaintiff obtained an equity line of credit secured by a second mortgage on the Property from First Charter Bank. Defendant's name does not appear on the signature card or any other document authorizing him to draw on the First Charter line of credit. Plaintiff thereafter obtained a second equity line of credit from Wachovia Bank ("Equity Line"). The names of both Plaintiff and Defendant appear on the Deed of Trust granted to Wachovia Bank.
Funds from the Equity Line were first used to pay off the balance of the First Charter credit line. Plaintiff drew on the Equity Line to finance plastic surgery and for other personal expenses. Defendant drew on the Equity Line to finance lasik eye surgery, car stereo equipment, a hunting license, and Success Magazine materials.[2] Defendant also made two separate $10,000 cash withdrawals from the Equity Line. Defendant claimed that $5,000 from each of these withdrawals was given to Plaintiff in the form of a check, although Defendant's bank statements do not show any $5,000 checks written to Plaintiff.
On the date of the parties' separation, the value of the Property was $248,000. The indebtedness secured by the Property on the date of separation was $135,656.20 to Countrywide on the first mortgage and $70,274.12 to Wachovia on the Equity Line, resulting in a net equity of $42,070. Prior to the parties' marriage, Plaintiff obtained a Capital One credit card for Defendant to use as Defendant's credit was too poor for him to obtain his own card. Defendant was the only party to use the card and upon separation, the balance owed on that card was $7,255.81.

III. Equity Line
Plaintiff first contends the trial court erred by taxing Defendant's separate withdrawals on the Equity Line against Plaintiff. We agree.
A premarital agreement is "an agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage." N.C. Gen. Stat. § 52B-2 (2003). "The principles of construction applicable to contracts also apply to premarital agreements[.]" Harllee v. Harllee, 151 N.C. App. 40, 46, 565 S.E.2d 678, 682 (2002). Thus, when a court interprets the language of a contract, "the presumption is that the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." Stewart v. Stewart, 141 N.C. App. 236, 240, 541 S.E.2d 209, 212 (2000) (citing Hartford Accident & Indem. Co. v. Hood, 226 N.C. 706, 40 S.E.2d 198 (1946)). When "the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court[,]" Hagler v. Hagler, 319 N.C. 287, 294, 354 S.E.2d 228, 234 (1987), and the standard of review is de novo. Kessler v. Shimp, 181 N.C. App. 753, 640 S.E.2d 822, disc. review denied, 361 N.C. 568, 650 S.E.2d 605 (2007). According to the Agreement, the parties "waive[d] any claims or rights of equitable distribution of marital property arising out of" N.C. Gen. Stat. § 50-20. The Agreement specified that separate property "shall remain and be the separate property of that party" and incorporated the definition of "separate property" in N.C. Gen. Stat. § 50-20(b). "Separate property" is defined by North Carolina statute as all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage. However, property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance. Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance. The increase in value of separate property and the income derived from separate property shall be considered separate property.
N.C. Gen. Stat. § 50-20(b)(2) (2003). The Agreement further states that "any real, personal or intangible property acquired during the marriage in joint names shall be divided on an equal basis." Accordingly, the trial court was required to determine which of the parties' assets and liabilities were separate and which were joint, and then to distribute those assets and liabilities per the Agreement.
The trial court made the following findings of fact regarding the Equity Line withdrawals:
11. Funds from [the Equity Line] were first used to pay off an existing loan to First Charter Bank in the amount of $23,000. Thereafter both parties wrote checks on the Equity Line. The balance owed on the date of separation was $70,274.12.
. . . .
13. The Civic automobile which the plaintiff drives was purchased with funds from the Equity Line and is titled in the name of the defendant.
. . . .
16. Both parties benefitted individually from the Equity Line in that the plaintiff paid for plastic surgery and the defendant paid for lasik surgery and this Equity Line balance reduced the total equity in the [P]roperty.
The trial court made the following findings of fact regarding the division of home equity:
14. The Pre-Marital Agreement provided that the defendant has [$4,000] equity in the home located at 6405 Deer Haven Drive and the plaintiff has $46,000 equity in the same [P]roperty. The parties agree that the value of the [P]roperty on the date of [s]eparation is $248,000[]. The indebtedness on that date was $135,656.20 to Countrywide on the first mortgage and $70,274.12 to Wachovia on the Equity Line for a total of $205,930.32. This leaves equity in the amount of $42,070[] on the said [P]roperty.
15. In the Pre-marital Agreement the plaintiff was to get 92% of $50,000[] equity and the defendant was to get 8%. Since the total equity at the date of separation was $42,070[], the plaintiff shall get $38,704[] in equity and the defendant shall get [$3,365] in equity.
The trial court further found that "the defendant was the only person to use the Capital One credit card" and that the balance on the card on the date of separation was $7,255.81. Based on these findings of fact, the trial court concluded, inter alia, "[t]he balance owed on the Capital One account is an actual debt of the defendant." The trial court made no conclusions, however, regarding the classification of the Equity Line withdrawals.
Upon its findings of fact and conclusions of law, the trial court ordered, inter alia:
1. The defendant, per the Pre-marital Agreement, is entitled to [$3,365] from the equity in the [P]roperty located at [6405] Deer Haven Drive, Mount Pleasant, NC and the plaintiff is entitled to $38,704[] from said equity.
2. The defendant shall be solely responsible for the payment of the balance of $7,255.81 on the Capital One credit card by paying this amount to the plaintiff who shall pay the credit card company directly.
3. The defendant's equity referred to above shall be deducted from the balance on the Capital One account which leaves a balance of [$3,890] which the defendant shall pay to the plaintiff on or before May 1, 2007.
The trial court deducted the amounts owed on the Countrywide loan and the Equity Line from the value of the Property to accurately compute the net equity in the Property, and then correctly distributed the equity according to the Agreement.[3] Additionally, the trial court correctly required Defendant to pay the entire Capital One debt as he was the only one to make charges on the card so it was his separate liability. The trial court also correctly offset the $3,365 in equity owed to Defendant by the $7,255.81 Capital One balance owed to Plaintiff, resulting in Defendant owing Plaintiff $ 3,890 to pay off the Capital One balance. However, just as the equity in the Property was an asset and the Capital One balance was a liability to be distributed according to the Agreement, the Equity Line debt was a liability to be distributed according to the Agreement.[4] If some or all of the Equity Line withdrawals were joint debts, Defendant would be responsible for half of those amounts, per the Agreement. If some of the withdrawals were Defendant's separate debts, he would be fully responsible for paying those, per the Agreement. Likewise, Plaintiff would be responsible for half of any joint debts and all of her separate debts. The trial court errantly relieved Defendant of his responsibility for any Equity Line debt by taxing the entire Equity Line debt against Plaintiff.
Accordingly, as the trial court failed to classify the Equity Line withdrawals as either separate or joint debts, and then erred by essentially deeming the entire debt to be Plaintiff's separate liability, we vacate and remand to the trial court to make appropriate findings of fact and conclusions of law as to the classification of the Equity Line withdrawals, and then to order such debts distributed according to the Agreement.

IV. Findings of Fact
Plaintiff next argues that certain of the trial court's findings of fact are not supported by the evidence. Our standard of review on appeal is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary.
Pegg v. Jones, ___ N.C. App. ___, ___, 653 S.E.2d 229, 231 (2007) (quotation marks and citations omitted), aff'd per curiam, __ N.C. ___, ___ S.E.2d ___ (May 6, 2008) (No. 9A08).
First, Plaintiff argues that the trial court's finding that "[P]laintiff knew or should have known" that Defendant was making withdrawals on the Wachovia Equity Line is not supported by competent evidence. Defendant testified that he and Plaintiff "agreed when we took out the [First Charter] equity line that we would retire some of our debt and we could equally take out ten thousand, five thousand each. She agreed that that's what we would do." Defendant further testified that
[t]he same thing was agreed upon when we refinanced that debt [with the Wachovia Equity Line], increased the equity line on 5/12/04, we withdrew ten thousand dollars and equally took five thousand dollars each, utilized it for whatever we decided we wanted to use it for, be it to retire debt or whatever. She was fully aware of it and acknowledged it; certainly.
When asked how Plaintiff had acknowledged it, Defendant responded, "We communicated. We were married. Communicated. We spoke; we talked." Defendant further testified that Plaintiff "was quite aware of all the transactions that took place on both equity lines, each and every one of them."
Such evidence is competent evidence to support the trial court's finding of fact that "[P]laintiff knew or should have known" that Defendant was using the Wachovia Equity Line. Thus, this finding of fact is binding on appeal and Plaintiff's argument is overruled.
Plaintiff also argues that the trial court's finding of fact that "[P]laintiff was to get 92% of $50,000[] equity and [D]efendant was to get 8%" equity in the Property is not supported by competent evidence. Schedule A of the Agreement states that "$ 46,000 (forty six thousand dollars) equity of the Marital home and lot located at 6405 Deer Haven Drive, Mount Pleasant, Cabarrus County, North Carolina" will "forever be deemed the Separate Property of [Plaintiff]." Schedule B provides that "$ 4,000 (four thousand dollars) equity of the Marital home and lot located at 6405 Deer Haven Drive, Mount Pleasant, Cabarrus County, North Carolina" will "forever be deemed the Separate Property of [Defendant]."
While Plaintiff argues that "[n]o competent evidence was presented at trial to support this finding of fact or a division of the equity based on percentages[,]" a simple mathematical calculation based on the wording of the Agreement supports the trial court's finding. Since Plaintiff had $46,000 of equity as her separate property and Defendant had $4,000 in equity as his separate property, together they had $50,000 of equity in the Property. As $46,000 is 92% of $50,000 and $4,000 is 8% of $50,000, the Agreement is sufficient evidence to support the trial court's finding of fact, and Plaintiff's argument is overruled.
AFFIRMED IN PART, VACATED AND REMANDED WITH INSTRUCTIONS IN PART.
Judges McGEE and TYSON concur.
Report per Rule 30(e).
NOTES
[2] Success Magazine is a company that sells educational and motivational materials to consumers.
[3] See discussion at IV. Findings of Fact, infra.
[4] The parties' agreed that Plaintiff would retain the 6405 Deer Haven Drive property and be responsible for the Countrywide loan as those items were Plaintiff's separate property.