DILLON, Judge.
 

 *281
 
 Jeanne Lund ("Wife") appeals from an equitable distribution order. For the following reasons, we affirm in part and reverse and remand in part.
 

 I. Background
 

 Wife and Robert Lund ("Husband") were married on 14 February 1997 and separated on 5 January 2013. Following their separation, Wife sued Husband for equitable distribution, seeking an
 
 unequal
 
 distribution of the marital estate. Husband answered and counterclaimed for equitable distribution, seeking an
 
 equal
 
 distribution of the marital estate. On 11 August 2014, following a four-day trial, the trial court entered an equitable distribution order, dividing the marital estate substantially
 
 equally.
 
 Wife timely appealed.
 

 II. Analysis
 

 Wife argues on appeal that the trial court erred in (1) classifying, valuing, and distributing certain marital property, including her pension benefits and three debts incurred during the marriage; (2) classifying, valuing, and distributing certain divisible property; and (3) determining that an equal distribution of the marital property was equitable.
 

 *282
 
 "In applying our equitable distribution statutes, the trial court must follow a three-step procedure, (1) classification, (2)[ ]valuation and (3) distribution."
 

 *178
 

 Seifert v. Seifert,
 

 82 N.C.App. 329
 
 , 334,
 
 346 S.E.2d 504
 
 , 506 (1986),
 
 aff'd,
 

 319 N.C. 367
 
 ,
 
 354 S.E.2d 506
 
 (1987).
 

 Property may be
 
 classified
 
 as marital, divisible, or separate. N.C. Gen.Stat. § 50-20(a), (b) (2014). Only marital or divisible property must be
 
 valued
 
 and then
 
 distributed
 
 to the parties by the trial court.
 

 Id.
 

 § 50-20(c).
 

 Regarding valuation, marital property is
 
 valued
 
 as of the date of separation,
 
 see
 

 Davis v. Davis,
 

 360 N.C. 518
 
 , 526-27,
 
 631 S.E.2d 114
 
 , 120 (2006), which in the present case was 5 January 2013, while divisible property is
 
 valued
 
 as of the date of distribution,
 
 see
 
 N.C. Gen.Stat. § 50-21(b) (2014), which in the present case was 11 August 2014.
 

 Once the marital and divisible property is appropriately valued, the trial court is to
 
 distribute
 
 this property equitably. N.C. Gen.Stat. § 50-20(a) (2014).
 

 A. Marital Property
 

 Wife argues that the trial court erred in its handling of certain marital property and marital debt. We address each argument in turn.
 

 1. State Pension
 

 Wife is employed by the State of North Carolina where she has earned and continues to earn compensation in the form of future pension benefits.
 

 In
 
 classifying
 
 a pension, it must be remembered that
 
 any
 
 compensation earned by a spouse during marriage (i.e., before the date of separation) is presumed to be marital property. N.C. Gen.Stat. § 50-20(b)(1) (2014). In accordance with this general rule, the right to receive pension benefits that are
 
 earned
 
 during the marriage (i.e., before the date of separation) is presumed to be marital property, even though the pension benefits are not to be
 
 received
 
 until well after the date of separation.
 
 See
 
 id.
 

 (defining "marital property" to include "vested and nonvested pension ... rights").
 

 Absent an agreement between the parties, there is only one method under North Carolina law by which a vested pension may be
 
 valued
 
 by the trial court. This method involves the five-step process outlined by our Court in
 
 Bishop v. Bishop,
 

 113 N.C.App. 725
 
 ,
 
 440 S.E.2d 591
 
 (1994). By this process, the "present value" of the pension is established as of the date of separation.
 

 Id.
 

 at 731
 
 ,
 
 440 S.E.2d at 595-96
 
 .
 

 *283
 
 Absent an agreement between the parties, there are only two methods by which a vested pension may be
 
 distributed
 
 by the trial court, which are codified in N.C. Gen.Stat. § 50-20.1(a)(3) and (a)(4).
 
 See
 

 id.
 

 at 731-32
 
 ,
 
 440 S.E.2d at 596
 
 . The first method, referred to in
 
 Bishop
 
 as "the present value ... [or] [ ] immediate offset method," is codified in N.C. Gen.Stat. § 50-20.1(a)(3) and allows the trial court to award one hundred percent (100%) of the future pension benefits to the employee-spouse and to "offset" this award by awarding a larger percentage of
 
 the other
 
 marital assets to the non-employee spouse.
 
 See
 
 id.
 

 The second method, referred to in
 
 Bishop
 
 as "the fixed percentage ... or [ ] deferred distribution method," is codified in N.C. Gen.Stat. § 50-20.1(a)(4) and allows the trial court to award the non-employee spouse a "fixed percentage" of the marital portion of the pension benefits as they are paid out in the future.
 
 See
 

 id.
 

 at 732
 
 ,
 
 440 S.E.2d at 596
 
 .
 

 Here, Husband and Wife stipulated to the
 
 classification
 
 of Wife's pension earned
 
 as of the date of separation
 
 as being entirely marital, since Wife had no years of service with the State prior to the marriage.
 
 [1]
 
 Wife, however, makes several arguments concerning the trial court's
 
 valuation
 
 and
 
 distribution
 
 of her pension. For the reasons set forth below, we hold that the trial court properly valued and distributed Wife's pension.
 

 a. Valuation
 

 The trial court determined that Wife's future pension benefits had a present value of $199,823 as of the date of separation, largely relying upon the expert opinion of a certified public accountant ("CPA") tendered as an expert by Husband. The evidence tended to
 
 *179
 
 show and the trial court found that the CPA applied the
 
 Bishop
 
 five-step process to arrive at his opinion of value. Wife, however, makes two arguments attacking the trial court's valuation of her pension:
 

 First, Wife argues that the CPA's opinion was incompetent because the CPA relied upon information which was never admitted into evidence and was otherwise inadmissible hearsay. We disagree.
 

 "[T]he trial judge is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony."
 
 State v. Bullard,
 

 312 N.C. 129
 
 , 140,
 
 322 S.E.2d 370
 
 , 376 (1984). We review the trial court's ruling on the admissibility of expert testimony for an abuse of discretion.
 
 State v. Anderson,
 

 322 N.C. 22
 
 , 28,
 
 366 S.E.2d 459
 
 , 463 (1988).
 

 *284
 
 In the present case, the
 
 information
 
 primarily relied upon by the CPA consisted of an affidavit prepared by the Retirement Systems Division of the Department of State Treasurer, which contains specific data about Wife's rights to her State pension and the amount of her expected benefit (the "State affidavit").
 

 It is true, as Wife contends, that the State affidavit was never formally offered into evidence and was, otherwise, hearsay. It is also true that North Carolina
 
 used to
 
 follow the rule that "an expert witness cannot base his opinion on hearsay evidence ... [or] facts [not] supported by [the] evidence[.]"
 
 Cogdill v. North Carolina State Highway Comm'n,
 

 279 N.C. 313
 
 , 327,
 
 182 S.E.2d 373
 
 , 381 (1971). However, as our Supreme Court has more recently observed, this "general rule has undergone significant modification in recent years[.]"
 
 State v. Huffstetler,
 

 312 N.C. 92
 
 , 106,
 
 322 S.E.2d 110
 
 , 119 (1984). For instance, Rule 703 of our Rules of Evidence, which was adopted in 1983,
 
 see
 

 1983 N.C. Sess. Laws 701
 
 , § 3, allows "an expert [to] give his opinion based on facts
 
 not otherwise admissible in evidence
 
 provided that the information considered by the expert is of the type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject,"
 
 see
 

 State v. Allen,
 

 322 N.C. 176
 
 , 184,
 
 367 S.E.2d 626
 
 , 630 (1988) (emphasis added).
 

 Here, the CPA testified that the State affidavit is the type of information that an expert would rely upon to value a pension, since it contains the data specific to a particular employee's pension needed to apply the five-step process outlined in
 
 Bishop.
 
 Further, the trial court determined that it was proper for the CPA to rely on the State affidavit, "pursuant to Rule of Evidence 703." In challenging this determination, Wife contends that the types of information falling within the ambit of Rule 703 include the National Vital Statistics Report published by the U.S. Department of Health and Human Services. The CPA, however, expressly testified that he
 
 did
 
 rely on the National Vital Statistics Report in determining the life expectancy of Wife, which is data that an expert needs to value a pension pursuant to
 
 Bishop.
 
 But the types of information cited by Wife would not contain
 
 other
 
 data an expert would need to make a
 
 Bishop
 
 evaluation, e.g., specific data about the employee-spouse's earnings, retirement dates which is found in the State affidavit. In any event, Wife points to no evidence tending to show that the State affidavit was not also a type of information relied upon by experts in the field of pension valuation. Wife's argument is overruled.
 

 Second, Wife argues that the State affidavit was not reliable because it contained data regarding Wife's pension as of 1 February 2013, and
 
 *285
 

 not
 
 as of the actual date of separation, 5 January 2013. However, we hold that this mere twenty-seven (27) day discrepancy goes to
 
 weight
 
 and not
 
 admissibility. See, e.g.,
 

 Northgate Shopping Ctr., Inc. v. State Highway Comm'n,
 

 265 N.C. 209
 
 , 211-12,
 
 143 S.E.2d 244
 
 , 245-46 (1965) (stating that evidence of value from a date other than the relevant date may still be admissible if the "other" date was not too remote in time);
 
 City of Wilson v. Hawley,
 

 156 N.C.App. 609
 
 , 615,
 
 577 S.E.2d 161
 
 , 165 (2003) (recognizing that expert witnesses "must be given wide latitude in formulating and explaining their opinions as to value"). Therefore, the CPA's opinion of value as of the date of separation was not rendered incompetent merely because he relied upon the State affidavit. We note that the trial court
 
 *180
 
 expressly stated in its order that it was valuing the pension "as of the date of the parties' separation," and not as of the date of the State's affidavit.
 

 b. Distribution
 

 Regarding the
 
 distribution
 
 of the pension, the trial court awarded Husband ten percent (10%) of the marital portion of Wife's future pension benefit payments, calculated as follows:
 

 10% of the marital portion of [Wife's] NC state pension, said [marital] portion to be determined by coverture fraction, the numerator of which is the months of NC state employment during marriage and the denominator of which is [the] total months of NC state employment, when that pension goes into pay status, with the amount to be determined by [Wife's] earnings preceding date of separation, as opposed to her last years of employment.
 

 We hold that this award complies with N.C. Gen.Stat. § 50-20.1. Specifically, the pension is a defined benefit plan; and the trial court correctly classified the marital portion of Wife's future pension benefit payments by employing the coverture fraction, mandated in N.C. Gen.Stat. § 50-20.1(d). By using the coverture fraction, the trial court recognized that a portion of these future benefits will be Wife's separate property, as she will continue working to earn these benefits after the date of separation.
 
 [2]
 
 After valuing the pension per
 
 Bishop,
 
 the trial court distributed the
 
 *286
 
 marital portion of the pension by awarding Husband a fixed percentage of the marital portion of those future benefit payments, which is allowed by N.C. Gen.Stat. § 50-20.1(a)(3). Husband, though, was awarded only ten percent (10%) of the marital portion of the pension benefits, whereas the trial court determined that a fifty-fifty split of the entire marital estate was equitable. The trial court, however, awarded a larger share of the
 
 other
 
 marital assets to Husband as an offset to achieve equity, which is allowed by N.C. Gen.Stat. § 50-20.1(a)(4). Therefore, the trial court utilized
 
 both
 
 distribution methods, which we hold was not an abuse of the trial court's discretion in this case.
 

 Wife argues that the trial court should have used
 
 only
 
 the fixed percentage method in distributing the pension. That is, she argues that the trial court should have distributed the marital portion of the pension fifty-fifty and also the other marital assets fifty-fifty. She contends that the non-pension assets are preferable because her future pension benefits are "speculative" at best. She contends that the order allows Husband to receive the marital house, an IRA that
 
 she
 
 built up during marriage, and other "present" assets, which he can currently enjoy, leaving her with almost nothing from the marital estate except a hope to receive pension benefits sometime in the future. While Wife's concern is a factor the trial court could have considered in distributing the marital estate, we cannot say that the trial court abused its discretion in distributing the marital assets in the manner it did. There is nothing in the statute which
 
 requires
 
 the trial court to apply the fixed percentage method exclusively when the pension makes up a large percentage of the marital estate. Therefore, Wife's argument is overruled.
 

 Wife further argues that the trial court committed the same error that occurred in
 
 Seifert v. Seifert,
 

 319 N.C. 367
 
 ,
 
 354 S.E.2d 506
 
 (1987). Wife's argument is misplaced. In
 
 Seifert,
 
 the trial court erred because, in awarding the non-employee spouse a portion of her husband's future pension benefits, it did not award her a fixed percentage of those future benefits, but rather awarded her a specific dollar amount (equal to the present value of her portion of her husband's pension)
 
 to be paid from her husband's future benefits. See
 

 Seifert,
 

 82 N.C.App. at 338
 
 ,
 
 346 S.E.2d at 509
 
 . The Supreme Court recognized that this methodology was error because it amounted to a double discounting.
 
 Seifert,
 

 319 N.C. at 371
 
 ,
 
 354 S.E.2d at 509-10
 
 . Here, though, the trial court did not engage in double discounting. It properly determined the present value of the pension
 
 *181
 
 as of the date of separation as mandated by
 
 Bishop,
 
 and awarded
 
 *287
 
 Husband a
 
 fixed percentage
 
 of Wife's future benefits.
 
 [3]
 
 Wife's argument is overruled.
 

 2. Marital Debt
 

 Wife contests the competency of the evidence to support the trial court's classification of the following debts as marital: (1) debt related to Husband's construction business in the amount of $5,931.67; (2) tax debt for the 2012 tax year of $2,495.00; and (3) credit card debt from a Discover card in the amount of $8,894.15. We disagree.
 

 As to whether property, or by extension, debt, "is marital or separate, the findings of the trial court will not be disturbed on appeal if there is competent evidence to support the findings."
 
 Loving v. Loving,
 

 118 N.C.App. 501
 
 , 507,
 
 455 S.E.2d 885
 
 , 889 (1995). This is true "despite the existence of evidence to the contrary."
 
 Johnson v. Johnson,
 

 230 N.C.App. 280
 
 , 281,
 
 750 S.E.2d 25
 
 , 27 (2013). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding."
 
 City of Asheville v. Aly,
 
 --- N.C.App. ----, ----,
 
 757 S.E.2d 494
 
 , 499 (2014).
 

 Regarding Husband's construction business debt, Husband testified that he operated a construction business as a sole proprietor during the marriage and that, as of the date of separation, he owed $5,931.67 to four specific suppliers and subcontractors, identifying each creditor by name and the specific amount owed to each. The parties stipulated that Husband's construction business was a marital asset. Though there may have been evidence to the contrary, we hold that there was sufficient evidence to support the trial court's finding that Husband's construction business debt was marital.
 

 Regarding the 2012 tax debt, Husband testified that there was owed $2,495.00 in federal taxes for that year. He testified that he had paid taxes for 2012, but that he mistakenly underpaid them. The parties were not separated until 2013. Therefore, we hold that there was competent evidence to support the trial court's finding that the 2012 tax debt was marital.
 

 *288
 
 Regarding the Discover credit card debt, Husband testified that he and Wife used the Discover card to purchase a refrigerator and that the other debt likely arose from the construction business, which, as previously stated, both parties stipulated was marital. Husband testified that the balance of the Discover card was $8,895.84 as of a statement date of 20 January 2013. As the parties' date of separation was 5 January 2013, we hold that the trial court's finding of the marital credit card debt from the Discover card was supported by competent evidence.
 

 B. Divisible Property
 

 Wife makes a number of arguments concerning the trial court's treatment of certain divisible property. N.C. Gen.Stat. § 50-20(b)(4) defines "divisible property" to include the following:
 

 a. [Passive] appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution....
 

 ...
 

 c. Passive income from marital property received after the date of separation....
 

 d. Passive increases and passive decreases in marital debt and financing charges and interest related to marital debt.
 

 N.C. Gen.Stat. § 50-20(b)(4) (2014).
 

 1. Increase in Value of Marital Home
 

 Under N.C. Gen.Stat. § 50-20(b)(4)(a), passive increases or decreases in the value of the marital home between the date of separation and the date of distribution are considered divisible. Therefore, passive increases in the value of the marital
 
 *182
 
 home must be distributed by the trial court as divisible property.
 
 See
 
 id.
 

 In the present case, the trial court valued the marital home at $267,000.00 as of the date of separation and distributed it to Husband. The trial court found that neither party presented evidence regarding the value of the marital home as of the date of distribution. Therefore, the court concluded that there was no divisible property in connection with the marital home as there was no evidence showing that there was any increase or decrease in the value of the marital home during the relevant time period.
 

 *289
 
 Wife contends, however, that she
 
 did
 
 introduce evidence showing that the value of the marital home increased to $300,000.00 by the date of distribution. Specifically, she testified at the trial (two months before the date of distribution) that she believed the marital home was worth $300,000.00. "[W]here the value of real property is a factual issue in a case, our Supreme Court has repeatedly held that the owner's opinion of value is competent to prove the property's value."
 
 United Cmty. Bank v. Wolfe,
 
 ---N.C.App. ----, ----,
 
 775 S.E.2d 677
 
 , 680 (2015).
 
 [4]
 
 We recognize that Wife did not testify whether she believed that the increase in value was "passive" or "active" in nature, as only a passive increase would be classified as divisible. However, she was not required to do so since
 
 any
 
 increase (or decrease) in value during the relevant time period is
 
 presumed
 
 to be passive in nature and, therefore, divisible property.
 
 Wirth v. Wirth,
 

 193 N.C.App. 657
 
 , 661,
 
 668 S.E.2d 603
 
 , 607 (2008).
 
 [5]
 
 Of course, this presumption is rebuttable.
 

 Id.
 

 Husband counters by arguing that we should read the trial court's finding that "no evidence" was presented to mean that "no competent evidence" was presented by either party on the issue. However, such a finding would also have been error, since Wife's testimony was competent.
 
 United Cmty. Bank,
 
 supra.
 

 We note that a finding by the trial court of "no
 
 credible
 
 evidence" being presented on the issue would not have been error, since the trial court is free to give any weight (or no weight) to any evidence presented.
 
 See
 

 Bodie v. Bodie,
 

 221 N.C.App. 29
 
 , 38,
 
 727 S.E.2d 11
 
 , 18 (2012). Nevertheless, we cannot discern this meaning from the present order. For instance, the trial court never makes mention in the order of Wife's testimony concerning her opinion of value, only referencing the opinions of the three appraisers who testified; and nothing in the order otherwise suggests that the trial court found Wife's testimony as not being "credible," much less that the court even considered it.
 

 *290
 
 We thus hold that the trial court erred in finding that "no evidence" was presented concerning the value of the marital home as of the date of distribution and further in failing to make any findings based on the competent evidence that was presented, and we remand for the trial court to make further findings on this issue.
 
 See
 

 Edwards v. Edwards,
 

 152 N.C.App. 185
 
 , 189,
 
 566 S.E.2d 847
 
 , 850 (2002) (remanding for findings where there was evidence that marital real property had increased in value during the period of separation before the date of distribution and the trial court made no findings regarding any change in value). On remand, the trial court is free to give any weight (or no weight) to the competent evidence, including Wife's testimony, that was presented.
 
 Bodie, supra.
 
 If, on remand, the trial court determines that there is divisible property to
 
 *183
 
 be valued and distributed, then the trial court may "revise its order distributing the parties' marital [and divisible] property" in order to achieve a division that is equitable.
 
 Edwards,
 

 152 N.C.App. at 189
 
 ,
 
 566 S.E.2d at 850
 
 .
 

 2. Rental Income from the Marital Home
 

 Wife argues that the trial court erred in not classifying and awarding certain rental income generated by the marital home during the separation. Specifically, Wife contends that certain rental payments generated by the marital home during the period of separation were divisible property.
 

 It is true, as Wife argues, that the rental income represents passive income from marital property and, therefore, is divisible pursuant to N.C. Gen.Stat. § 50-20(b)(4)(c). However, we hold that the trial court did classify the rental income as "divisible" property. Specifically, the trial court determined that "[Husband's] mortgage payments and costs associated with the refinance more than offset
 
 any divisible credit
 
 that might be due to [Wife] by virtue of ... rental income received by [Husband]." (Emphasis added.) Further, the court made a distribution of this rental income to Husband, based on its finding that Husband had incurred refinancing costs and made mortgage payments.
 

 3. Post-separation Payments
 

 Wife argues that the trial court erred in finding certain post-separation payments to be divisible property, pointing to the 2013 amendment to the definition of "divisible" property in N.C. Gen.Stat. § 50-20. Specifically, N.C. Gen.Stat. § 50-20(b)(4) defines divisible property to include, in part, "[p]assive increases and passive decreases in marital debt and financing charges and interest related to marital debt."
 
 See
 
 N.C. Gen.Stat. § 50-20(b)(4)(d) (2014). We hold that this statutory language
 
 *291
 
 excludes from the definition of divisible property
 
 non-passive
 
 increases and decreases in marital debt and
 
 non-passive
 
 increases and decreases in financing charges and interest related to marital debt which occurred on or after 1 October 2013, the effective date of the 2013 amendment.
 
 See
 

 Cooke v. Cooke,
 

 185 N.C.App. 101
 
 , 108,
 
 647 S.E.2d 662
 
 , 667 (2007) (holding that amendment to definition of divisible property in N.C. Gen.Stat. § 50-20(b)(4)(d) applies only to post-separation payments toward marital debt which occurred
 
 after
 
 the effective date of the amendment);
 
 Warren v. Warren,
 

 175 N.C.App. 509
 
 , 517,
 
 623 S.E.2d 800
 
 , 805 (2006) (same).
 
 [6]
 

 First, Wife contends that the trial court incorrectly classified interest payments made by Husband on the Home Depot account and on the Discover Card as divisible property. We note that the order does not state
 
 when
 
 Husband made these payments. In any event, we agree with Wife that any payments made by Husband
 
 after
 
 1 October 2013 should not have been classified as divisible, as they constituted
 
 active
 
 decreases in interest related to marital debt. However, like in
 
 Cooke,
 
 the error "does not necessitate reversal or remand ... [as] the trial court had authority to reimburse [Husband] for [his] post-separation [interest] payments[.]"
 
 185 N.C.App. at 108
 
 ,
 
 647 S.E.2d at 667
 
 .
 
 [7]
 

 Second, Wife contends that the trial court incorrectly characterized a $1,325.00 mortgage payment by Husband on the marital home in May 2014 as divisible property. Wife is correct that this mortgage payment is not divisible since it was made after the effective date of the 2013 amendment. However,
 
 *184
 
 there is nothing in the order to suggest that the trial court treated this mortgage payment as divisible property. Rather, the order suggests that the trial court considered the mortgage payment as a distributional factor in the award of the rental payments received by Husband after the date of separation on the marital home. Wife's argument is overruled.
 
 *292
 
 Finally, Wife contends that the trial court erred in classifying as divisible two tax refunds belonging to her which were applied to the parties' tax liability for the 2011 tax year. Specifically, the trial court stated that these tax refunds were Wife's separate property and effectively treated the use of these refunds towards the marital tax debt as divisible property, and awarded Wife a credit for the amounts of these refunds. Assuming, however, that the trial court erred, we hold that any error was harmless to Wife, as she benefited as it was
 
 she
 
 who received the credit.
 

 C. Equal Distribution
 

 Finally, Plaintiff argues that the trial court erred in determining that an equal distribution of the marital estate was equitable. However, we hold that the trial court did not abuse its discretion in this regard.
 

 Our Supreme Court has stated that the public policy of this State "so strongly favor[s] the equal division of marital property that an equal division is made
 
 mandatory
 
 unless the court determines that an equal division is not equitable."
 
 White v. White,
 

 312 N.C. 770
 
 , 776,
 
 324 S.E.2d 829
 
 , 832 (1985) (emphasis in original) (internal marks omitted). Therefore, "[t]he party seeking an unequal division bears the burden of showing, by a preponderance of evidence, that an equal division would not be equitable."
 
 Armstrong v. Armstrong,
 

 322 N.C. 396
 
 , 404,
 
 368 S.E.2d 595
 
 , 599 (1988).
 

 Wife argues that she offered extensive evidence to support an unequal distribution award. We have held that where "evidence is presented from which a reasonable finder of fact could determine that an [ ]equal division would be inequitable, a trial court is required to consider the factors set forth in [N.C. Gen.Stat.] § 50-20(c)."
 
 Atkinson v. Chandler,
 

 130 N.C.App. 561
 
 , 566,
 
 504 S.E.2d 94
 
 , 97 (1998). Wife does not make any specific argument concerning any failure by the trial court to consider any of the statutory factors.
 

 Our review is limited to "whether there was a clear abuse of discretion."
 
 White,
 

 312 N.C. at 777
 
 ,
 
 324 S.E.2d at 833
 
 . "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason."
 

 Id.
 

 Accordingly, based on these extensive findings and the ample record evidence in support of them, notwithstanding Wife's evidence to the contrary, we hold that the trial court did not abuse its discretion in determining that an equal distribution was equitable. Therefore, this argument is overruled.
 

 *293
 
 III. Conclusion
 

 We reverse the trial court's finding that neither party introduced evidence of the existence of divisible property associated with any passive increase (or decrease) in value of the marital home during the period of separation, and we remand for more findings on this issue. After considering these issues on remand, the trial court may "revise its order distributing the parties' marital [and divisible] property" in order to achieve a division that is equitable.
 
 Edwards,
 

 152 N.C.App. at 189
 
 ,
 
 566 S.E.2d at 850
 
 . With respect to Wife's remaining arguments, we affirm the trial court's order.
 

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 

 Judges HUNTER, JR., and DIETZ concur.
 

 [1]
 

 Of course, when Wife ultimately retires in the future, her pension benefits that will ultimately be paid out will
 
 not
 
 be entirely marital because she will have continued earning these benefits as she continues to work after the date of separation.
 

 [2]
 

 The numerator of the coverture fraction is the number of years during marriage (i.e., before separation) the future benefits were earned, and the denominator is the
 
 total
 
 number of years the benefits were earned.
 
 See
 

 Seifert v. Seifert,
 

 319 N.C. 367
 
 , 370,
 
 354 S.E.2d 506
 
 , 509 (1987) ;
 
 Bishop v. Bishop,
 

 113 N.C.App. 725
 
 , 729-30,
 
 440 S.E.2d 591
 
 , 595 (1994).
 

 [3]
 

 The trial court determined that the pension had a value of $199,823 as of the date of separation. The court would have committed the double discounting error that occurred in
 
 Seifert
 
 if, in awarding Husband ten percent (10%) of the pension, it had awarded Husband $19,982.30 (10% of the pension value)
 
 and had
 
 required Husband to wait until Wife began drawing her pension to receive this award. However, the trial court avoided this error by awarding Husband this future benefit as a
 
 fixed percentage
 
 (rather than a specific dollar amount).
 

 [4]
 

 There is an exception to this general rule where "it affirmatively appears that the owner does not know the market value of his property [.]"
 
 N.C. State Highway Comm'n v. Helderman,
 

 285 N.C. 645
 
 , 652,
 
 207 S.E.2d 720
 
 , 725 (1974). Furthermore, "an owner's opinion is not competent where it is shown that the owner's opinion is not really his own but is based entirely on the opinion of others."
 
 Wolfe,
 
 --- N.C.App. at ----,
 
 775 S.E.2d at 680, n.2
 
 .
 

 [5]
 

 Wife also contends that the testimony of her expert who valued the home as of eight (8) months before the date of distribution was some evidence to establish the home's value as of the date of distribution. However, as we have concluded that Wife's opinion of value was competent to establish the marital home's value as of the date of distribution, we need not reach whether the expert's opinion was as of a date too remote from the date of distribution to be considered competent, as a matter of law.
 

 [6]
 

 The
 
 Cooke
 
 and
 
 Warren
 
 cases applied a 2002 amendment to the definition of the divisible property pertaining to post-separation payments towards marital debt. Though the 2013 amendment rather than the 2002 amendment applies to the present case, the same reasoning applies; and, therefore, we are compelled to follow
 
 Cooke
 
 and
 
 Warren.
 

 [7]
 

 We need not reach whether it would be reversible had the trial court made the
 
 opposite
 
 error by
 
 failing
 
 to classify the interest payments made
 
 before
 
 1 October 2013 as divisible. That is, Wife is not contending that the trial court
 
 failed
 
 to value and distribute certain divisible property.
 
 Cunningham v. Cunningham,
 

 171 N.C.App. 550
 
 , 556,
 
 615 S.E.2d 675
 
 , 680 (2005) (holding that the trial court must "value all marital and divisible property ... in order to reasonably determine whether the distribution ordered is equitable"). Rather, she is contending that the trial court valued and distributed certain property that
 
 should not have been
 
 classified as divisible.