IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1304

 Filed: 5 November 2019

Mecklenburg County, No. 16 CVD 11052

DIETER CRAGO, Plaintiff,

 v.

CANDICE CRAGO, Defendant.

 Appeal by defendant from order entered 19 June 2018 by Judge Jena P. Culler

in Mecklenburg County District Court. Heard in the Court of Appeals

19 September 2019.

 Rosenwood, Rose & Litwak, PLLC, by Nancy S. Litwak, Erik M. Rosenwood,
 and Meredith R. Hiller, for plaintiff.

 Plumides, Romano, Johnson & Cacheris, P.C., by Richard B. Johnson and
 John Cacheris, for defendant.

 ARROWOOD, Judge.

 Candice Crago (“defendant”) appeals from an equitable distribution and

alimony Order awarding her ex-husband, Dieter Crago (“plaintiff”), $120,000.00, and

challenges the denial of alimony and attorney’s fees. For the following reasons, we

affirm.

 I. Background
 CRAGO V. CRAGO

 Opinion of the Court

 Plaintiff and defendant were married on 23 June 2007. Plaintiff and

defendant both worked as engineers until 2010, when they were laid off. In order to

support themselves through unemployment, plaintiff and defendant liquidated their

401(k) accounts and pension plans. Plaintiff later obtained work again and became

the sole wage earner for the remainder of the marriage, while defendant enrolled in

school to pursue various areas of study. In 2013, plaintiff and defendant opened a

joint bank account, from which defendant would sometimes withdraw funds to

transfer to her separate account. Defendant would also deposit checks written to her

by plaintiff into her separate account. The parties had no children together, but

defendant had two children from a previous marriage to Michael Heintz.

 On 22 September 2004, defendant and Mr. Heintz took out a $1,000,000.00 life

insurance policy on Mr. Heintz’s life and named defendant as the beneficiary. During

her marriage to plaintiff, defendant paid the insurance premiums partly with funds

she received from plaintiff. In October 2015, following Mr. Heintz’s death in

September, defendant received the payout from the life insurance policy. On

16 January 2016, plaintiff and defendant separated. On 24 June 2016, plaintiff filed

a “Complaint” for equitable distribution of the parties’ assets. On 20 October 2016,

defendant filed a counterclaim for equitable distribution, alimony, and attorney’s

fees.

 -2-
 CRAGO V. CRAGO

 Opinion of the Court

 A trial was held on 15 March 2018, and the trial court issued an “Order for

Equitable Distribution and Alimony” (“Order”) in which it determined the life

insurance policy to be marital property, and distributed the property 80% to

defendant and 20% to plaintiff. Plaintiff was awarded $120,000.00 in proceeds from

the life insurance policy, and was assigned all of the parties’ tax debt. Defendant’s

claims for alimony and attorney’s fees were denied. Defendant subsequently

appealed.

 II. Discussion

 On appeal, defendant assigns as error the trial court’s: (1) classification of life

insurance proceeds, 2012 GMC Sierra, BB&T Trust Account, and certain tax debt as

marital property; (2) distribution to plaintiff in the amount of $120,000.00; and (3)

denial of defendant’s claims for alimony and attorney’s fees.

 When the trial court sits without a jury, this Court reviews a trial court’s

equitable distribution order for “whether there was competent evidence to support

the trial court’s findings of fact and whether those findings of fact supported its

conclusions of law.” Casella v. Alden, 200 N.C. App. 24, 28, 682 S.E.2d 455, 459 (2009)

(citing Oakley v. Oakley, 165 N.C. App. 859, 861, 599 S.E.2d 925, 927 (2004)). “The

division of property in an equitable distribution ‘is a matter within the sound

discretion of the trial court.’ ” Cunningham v. Cunningham, 171 N.C. App. 550, 555,

615 S.E.2d 675, 680 (2005) (quoting Gagnon v. Gagnon, 149 N.C. App. 194, 197, 560

 -3-
 CRAGO V. CRAGO

 Opinion of the Court

S.E.2d 229, 231 (2002)). “A trial court may be reversed for abuse of discretion only

upon a showing that its actions are manifestly unsupported by reason.” White v.

White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

 A. Classification of the Life Insurance Proceeds

 1. The Mechanistic Approach Was Proper

 Defendant first argues the trial court abused its discretion when it rejected the

analytic approach when determining that the life insurance proceeds were marital

property in its equitable distribution Order. We disagree.

 “Pursuant to N.C. Gen. Stat. § 50-20 [(2017)], equitable distribution is a three-

step process requiring the trial court to ‘(1) determine what is marital [and divisible]

property; (2) find the net value of the property; and (3) make an equitable distribution

of that property.’ ” Petty v. Petty, 199 N.C. App. 192, 197, 680 S.E.2d 894, 898 (2009)

(quoting Cunningham, 171 N.C. App. at 555, 615 S.E.2d at 680)). Under North

Carolina law, marital property is “all real and personal property acquired by either

spouse or both spouses during the course of the marriage and before the date of the

separation of the parties, and presently owned, except property determined to be

separate property or divisible property[.]” N.C. Gen. Stat. § 50-20(b)(1) (2017).

Separate property is that acquired by a spouse before marriage, or acquired by devise,

descent, or gift during the marriage. N.C. Gen. Stat. § 50-20(b)(2). Generally,

 -4-
 CRAGO V. CRAGO

 Opinion of the Court

divisible property refers to certain property received after the date of separation but

prior to distribution. N.C. Gen. Stat. § 50-20(b)(4).

 North Carolina courts have adopted two different approaches for determining

what is marital and separate property: the “mechanistic” approach and the “analytic”

approach. In Johnson v. Johnson, our Supreme Court described the mechanistic

approach as:

 literal and looks to the general statutory definitions of
 marital and separate property and concludes that since the
 award was acquired during the marriage and does not fall
 into the definition of separate property or into any
 enumerated exception to the definition of marital property,
 it must be marital property.

317 N.C. 437, 446, 346 S.E.2d 430, 435 (1986). In contrast, “[t]he analytic approach

asks what the award was intended to replace,” focusing on the purpose of the

compensation rather than its statutory definition. Id.

 In support of her argument the trial court erred by not applying the analytic

approach, defendant cites several cases concerning classification of personal injury

settlements and disability benefits. See Johnson, 317 N.C. 437, 346 S.E.2d 430

(1986); Cooper v. Cooper, 143 N.C. App. 322, 545 S.E.2d 775 (2001); Finkel v. Finkel,

162 N.C. App. 344, 590 S.E.2d 472 (2004). However, defendant also acknowledges

North Carolina courts have never applied this approach in the context of life

insurance proceeds. See Foster v. Foster, 90 N.C. App. 265, 368 S.E.2d 26 (1988).

Nevertheless, she urges us to adopt the analytic approach in this case, based on

 -5-
 CRAGO V. CRAGO

 Opinion of the Court

“important public policy considerations” surrounding whether life insurance proceeds

intended to benefit a spouse’s children from another marriage should be considered

marital property. Furthermore, she argues Foster is distinguishable from the present

case and therefore should not be binding on this Court.

 In Foster, the husband and wife had purchased a life insurance policy on their

children during their marriage. 90 N.C. App. at 265, 368 S.E.2d at 26. After the

parties separated, the husband alone paid the premiums for the policy. During the

separation period, one of the children passed away and the life insurance proceeds

were paid and placed in a trust account. Id. at 265, 368 S.E.2d at 27. In divorce

proceedings, the wife claimed the life insurance proceeds were a marital asset

because some of the policy premiums had been paid for with marital funds. Id. at

266, 368 S.E.2d at 27. We disagreed, holding that because the claim for death benefits

did not arise until after separation, when their son passed away, the policy proceeds

were the husband’s separate property. Id. at 268, 368 S.E.2d at 28. In making our

ruling, we noted that, pursuant to N.C. Gen. Stat. § 50-20, “in order for property to

be considered marital property it must be ‘acquired’ before the date of separation and

must be ‘owned’ at the date of separation.” Id. at 267, 368 S.E.2d at 27.

 Defendant argues the present case is distinguishable from Foster because that

case concerned a life insurance policy on the lives of the parties’ own children,

whereas the policy in dispute here covered the life of her ex-husband and was

 -6-
 CRAGO V. CRAGO

 Opinion of the Court

intended to be used to care for her children from her prior marriage. However, the

relevant fact under the mechanistic approach we applied in Foster was whether the

property was acquired before the date of separation, not who the policy covered or

what its intended purpose was. See id.

 Here, defendant executed the life insurance policy on her ex-husband prior to

her marriage to plaintiff. However, evidence showed defendant paid the insurance

premiums in part with money she received from plaintiff. Thus, the insurance

premiums were paid in part with marital funds. In addition, the claim for death

benefits arose prior to the parties’ separation, upon Mr. Heintz’s death in September

2015. The proceeds were also paid to defendant prior to her separation from plaintiff

in January 2016. In keeping with our holding in Foster, whether the property was

acquired prior to the parties’ separation controls whether it is considered marital or

separate property. Accordingly, because defendant received the proceeds before

separating from plaintiff, the trial court did not err in concluding the proceeds were

marital property. The trial court also did not abuse its discretion in applying the

mechanistic approach, which this Court has applied in the insurance context, instead

of the analytic approach advocated by defendant.

 2. Source of Funds

 In the alternative, defendant contends the trial court abused its discretion in

its source of funds analysis. We disagree.

 -7-
 CRAGO V. CRAGO

 Opinion of the Court

 In making an equitable distribution determination, “all property must be

classified as marital or separate, and when property has dual character, the

component interests of the marital and separate estates must be identified[.]” McIver

v. McIver, 92 N.C. App. 116, 124, 374 S.E.2d 144, 149 (1988). If property is acquired

with a mixture of marital and separate property, North Carolina courts apply the

“source of funds” rule to determine whether the property is marital or separate. Id.

“Under the source of funds analysis, property is ‘acquired’ as it is paid for, and thus

may include both marital and separate ownership interests.” Id.

 Here, the trial court made the following findings of fact:

 i) Wife’s State Employee’s Credit Union Account (aka
 “SECU”) ending in 3207. The Court finds this account
 to be marital. The date of separation value of
 $3,738.00. This was Wife’s primary checking account
 since 2007 and Wife has not overcome the
 presumption that it is marital property. Her
 testimony was that the sources of funds for this
 account were income, liquidated pension,
 unemployment, sale of her personal property, child
 support and moneys from the joint account. While the
 account may have existed prior to the date of the
 marriage, there is certainly no tracing and the
 evidence points to the fact that the contents of this
 account as of the date of separation were marital. The
 Court distributes this account to the Wife.

 ....

 vii) BB[&]T Account ending in 0655 [containing the life
 insurance proceeds]. . . . The evidence shows that
 Wife took out the policy on her former husband’s life
 prior to marriage on 9/22/04. She always paid the

 -8-
 CRAGO V. CRAGO

 Opinion of the Court

 premiums from the same bank account, which is the
 SECU account ending 3207 (Item #7). The account
 was in her name and owned by her prior to marriage.
 During the marriage, the source of deposits into this
 account, were: (a) income from liquidated pension; (b)
 unemployment; (c) transfers from the parties’ joint
 account; (d) proceeds from consignment sale of her
 personal property; and (e) child support payments
 from her former husband. . . . In the month before
 Wife’s first husband passed away, per D39, the SECU
 account had a beginning balance on 8/6/15 of $156.34.
 There was a deposit on 8/6/15 of $1,000[.00] from the
 parties’ joint account, pursuant to Wife’s testimony,
 and a deposit on 8/6/15 of $705.43 from a child support
 check from Wife’s former husband (D37). There were
 three debit purchase transactions between 8/6/15 and
 8/10/15 totaling $62.67, and an internet debit transfer
 of $1,100[.00] to Wife’s savings account on 8/10/15. On
 8/11/15, the $364.50 Allstate life insurance premium
 payment was debited. . . . Even if the Court found her
 child support to be separate, which it does not, then
 there is nothing to indicate what the source of the
 funds was that paid the premium.

 Defendant contends “the trial court used an improper analysis under the

source of funds rule[.]” Under defendant’s proposed source of funds analysis, the trial

court should have found there was 36% in separate funds in the account and 64%

marital at the time the last insurance premium payment was drafted on

11 August 2015. Based on our decision in Wade v. Wade, 72 N.C. App. 372, 325 S.E.2d

260 (1985), she argues the trial court should have determined the insurance proceeds

to be 36% separate and 64% marital, according to the ratio of separate to marital

funds used to pay the last insurance premium. We reject defendant’s argument.

 -9-
 CRAGO V. CRAGO

 Opinion of the Court

 Defendant’s analysis relies on the assumption there was separate property in

the account, which the trial court expressly found was not the case. The evidence

showed defendant opened the SECU account ending in 3207 in 2007, the same year

she married plaintiff, and used it to pay for the life insurance premiums on Mr.

Heintz. Throughout her marriage to plaintiff, defendant funded that account with

her income, liquidated pension, unemployment benefits, sale of her personal

property, child support, and money from the joint account with plaintiff. Pursuant to

N.C. Gen. Stat. § 50-20, marital property is all real and personal property acquired

by either spouse after marriage and before separation, with the exception of separate

property. N.C. Gen. Stat. § 50-20(b). Defendant presented no evidence showing any

of the money in the 3207 account was acquired by devise, descent, or gift, such that

it would constitute separate property. Id. She also presented no evidence showing

any premarital funds still existed in the account after eight years. The trial court

acknowledged this fact, finding that “[w]hile the account may have existed prior to

the date of marriage, there is certainly no tracing.” On the contrary, that defendant

has been unemployed for years and was at one point forced to liquidate her pension

in order to support herself and plaintiff, indicates nothing of her premarital funds

remains. Accordingly, the trial court’s finding that the account ending in 3207 was

marital, and thus the funds used to pay the last life insurance premium were marital,

was not an abuse of discretion.

 - 10 -
 CRAGO V. CRAGO

 Opinion of the Court

 B. 2012 GMC Sierra and BB&T Trust

 Defendant next argues the trial court erred in distributing a 2012 GMC Sierra

and a BB&T Trust account ending in 2110 titled in the name of C. Crago Trust

because the trial court lacked jurisdiction to do so. We disagree.

 Plaintiff contends defendant waived this argument by not raising it at trial.

However, “[i]t is well settled that ‘the issue of a court’s jurisdiction over a matter may

be raised at any time, even for the first time on appeal or by a court sua sponte.’ ”

Carpenter v. Carpenter, 245 N.C. App. 1, 8, 781 S.E.2d 828, 835 (2016) (quoting State

v. Gorman, 221 N.C. App. 330, 333, 727 S.E.2d 731, 733 (2012)). We review a trial

court’s jurisdiction de novo. McKoy v. McKoy, 202 N.C. App. 509, 511, 689 S.E.2d 590,

592 (2010) (citing Harper v. City of Asheville, 160 N.C. App. 209, 213, 585 S.E.2d 240,

243 (2003)).

 We have previously held that

 [W]hen a third party holds legal title to property which is
 claimed to be marital property, that third party is a
 necessary party to the equitable distribution proceeding,
 with their participation limited to the issue of the
 ownership of that property. Otherwise the trial court
 would not have jurisdiction to enter an order affecting the
 title to that property.

Upchurch v. Upchurch, 122 N.C. App. 172, 176, 468 S.E.2d 61, 63-64 (1996) (citations

omitted). More recently, in Carpenter, we held that a trial court lacked jurisdiction

to distribute a Wells Fargo UTMA account where the party who held legal title to the

 - 11 -
 CRAGO V. CRAGO

 Opinion of the Court

property was not joined in the action. 245 N.C. App. at 10-11, 781 S.E.2d at 836-37.

See also Nicks v. Nicks, 241 N.C. App. 487, 496, 774 S.E.2d 365, 373 (2015) (holding

the trial court lacked jurisdiction to order distribution of Entrust, LLC where the

Trust holding legal title to the property was not made party to the action).

 Here, defendant claims the 2012 GMC Sierra and the BB&T Trust account

ending in 2110 were titled in the name of the C. Crago Trust. However, there is no

evidence in the Record supporting this assertion. In support of her claim, defendant

directs us to a vague reference to a GMC vehicle owned by C. Crago Trust, but

defendant and plaintiff owned multiple GMC vehicles, and there is no proof the

particular vehicle referenced is the 2012 GMC Sierra at issue here. In addition, the

Record contains no mention at all of a BB&T Trust account owned by C. Crago Trust.

Although the trial court does reference a BB&T Trust Account in its findings, there

is no evidence in the Record a third-party owned the trust. Thus, we reject

defendant’s argument because there is no evidence the trial court lacked jurisdiction

to distribute this property. See Lawing v. Lawing, 81 N.C. App. 159, 162, 344 S.E.2d

100, 104 (1986) (“Where the record is silent on a particular point, we presume that

the trial court acted correctly”).

 C. Tax Debt

 Defendant next argues the trial court erred in classifying certain income tax

debt as marital. We disagree.

 - 12 -
 CRAGO V. CRAGO

 Opinion of the Court

 “A marital debt . . . is one incurred during the marriage and before the date of

separation by either spouse or both spouses for the joint benefit of the parties.”

Huguelet v. Huguelet, 113 N.C. App. 533, 536, 439 S.E.2d 208, 210 (1994). “The party

who claims that any debt is marital bears the burden of proof on that issue” and “must

show both the value of the debt on the date of separation and that it was incurred

during the marriage for their joint benefit[.]” Riggs v. Riggs, 124 N.C. App. 647, 652,

478 S.E.2d 211, 214 (1996) (internal quotation marks omitted), disc. review denied,

345 N.C. 755, 485 S.E.2d 297 (1997).

 This Court has previously held that income tax debt incurred during marriage

and before separation constitutes marital debt. In Lund v. Lund, the Husband owed

$2,495.00 in federal taxes in 2012, and the parties did not separate until 2013. 244

N.C. App. 279, 287, 779 S.E.2d 175, 181 (2015). Based on those facts, we held that

there was competent evidence to support the trial court’s finding that the 2012 tax

debt was marital. Id. We also upheld the trial court’s finding that credit card debt

incurred during the same month the parties separated was marital. Id. at 288, 779

S.E.2d at 181.

 Here, the evidence showed the parties were married on 23 June 2007 and

separated on 16 January 2016. From approximately 2010 to 2016, plaintiff was the

sole wage earner of the family. During that time, the parties’ accrued federal income

tax debt totaling $62,783.96, including failure-to-pay penalties. The trial court found

 - 13 -
 CRAGO V. CRAGO

 Opinion of the Court

that the federal income taxes owed from 2010 to 2015 were marital. It further found

that a majority of plaintiff’s 2016 tax debt was separate, but a portion amounting to

$358.00 on the date of separation was marital. There is competent evidence to

support the trial court’s findings of fact, thus the trial court did not abuse its

discretion.

 D. $120,000.00 Distributive Award to Husband

 Defendant next contends the trial court abused its discretion by ordering her

to make a distributive award of $120,000.00 to plaintiff without first finding if she

had sufficient funds to make such distribution. This argument is without merit.

 In its finding of fact number 16, the trial court found:

 [T]here is over $200,000.00 remaining in the BB&T
 account ending in 0655 [containing the proceeds of the life
 insurance policy]. However, if it is not possible to still do
 an in-kind distribution from that account so as to distribute
 $120,000.00 from that account to Husband, then it is to be
 considered a distributive award of $120,000.00 to be paid
 to Husband within the next 60 days.

 Defendant contends there was no evidence of the amount of funds available in

the account as of the date of trial. Citing to our decision in Embler v. Embler, 159

N.C. App. 186, 582 S.E.2d 628 (2003), defendant asserts “when an in-kind

distribution is rebutted, and the trial [c]ourt orders a lump sum distribution, the trial

[c]ourt must make findings that there are sufficient funds available for the

distribution.” However, in Embler we were concerned with a defendant who “had no

 - 14 -
 CRAGO V. CRAGO

 Opinion of the Court

obvious liquid assets” and that the trial court had not taken into account any adverse

financial ramifications that could result from ordering a defendant to pay an award

from a non-liquid asset. Embler, 159 N.C. App. at 188-89, 582 S.E.2d at 630. We are

not faced with the same concerns in this case.

 Here, the evidence showed defendant did have “obvious liquid assets” from

which to make a distributive award, consisting primarily of the life insurance

proceeds in defendant’s BB&T bank account. The trial court found there was

$841,784.00 remaining in the account as of the parties’ date of separation. Defendant

testified she had been using the life insurance proceeds to support herself and her

children, with her expenses averaging $3,250.00 per month. Though defendant

argues two years have passed since the parties separated, based on the evidence, it

was reasonable for the trial court to conclude that there was at least $200,000.00

remaining from the $841,784.00. Accordingly, there was competent evidence to

support the trial court’s finding and the trial court did not abuse its discretion in

ordering defendant to make a distributive award of $120,000.00.

 E. Alimony and Attorney’s Fees

 Finally, defendant contends the trial court erred in denying defendant’s claim

for alimony because it did not make sufficient findings on the parties’ financial status

and accustomed standard of living. We disagree.

 - 15 -
 CRAGO V. CRAGO

 Opinion of the Court

 We review a determination of whether a spouse is entitled to alimony de novo.

Barrett v. Barrett, 140 N.C. App. 369, 371, 536 S.E.2d 642, 644 (2000) (citations

omitted). The amount of alimony awarded is reviewed for abuse of discretion. Id.

 Pursuant to N.C. Gen. Stat. § 50-16.3A, “[t]he court shall award alimony to the

dependent spouse upon a finding that one spouse is a dependent spouse, that the

other spouse is a supporting spouse, and that an award of alimony is equitable after

considering all relevant factors, including those set out in subsection (b)[.]” N.C. Gen.

Stat. § 50-16.3A(a) (2017). A dependent spouse is “a spouse, whether husband or

wife, who is actually substantially dependent upon the other spouse for his or her

maintenance and support or is substantially in need of maintenance and support from

the other spouse.” N.C. Gen. Stat. § 50-16.1A(2) (2017). The spouse asserting the

claim for alimony has the burden of proving dependency. Williamson v. Williamson,

217 N.C. App. 388, 392, 719 S.E.2d 625, 627 (2011).

 In denying defendant’s claim for alimony, the trial court made the following

finding of fact:

 17) Alimony: Husband is representing himself and the
 first two sentences of his closing argument was “how
 is she [Wife] dependent upon me if she has a
 $1,000,000.00.” The Court agrees with Husband.
 Wife does not have all of the $1,000,000.00 but she has
 $777,851.00 from this distribution. Though Husband
 was earning money during the marriage, part of
 Wife’s complaint is that Husband was not supporting
 her during [the] marriage. Nevertheless, Wife got the
 life insurance proceeds and had them at her disposal

 - 16 -
 CRAGO V. CRAGO

 Opinion of the Court

 of over a $1,000,000.00 while they were still married,
 kept them and had access and use of those proceeds in
 any investments [ ] that she could have yielded from
 those proceeds after the date of separation. The Court
 finds that she is not a dependent spouse as of the date
 of trial, which is the date that it is determined and
 therefore the Court does not award alimony.

 In sum, the trial court found defendant was not dependent on plaintiff for her

maintenance and support, nor in need of maintenance and support from plaintiff,

because she had substantial unearned income in the form of the life insurance

proceeds. Defendant produced no evidence to the contrary. In addition, throughout

its Order, the trial court made findings concerning the duration of the parties’

marriage, education level, earning capacity, debts, assets, standard of living, and

plaintiff’s contribution to the education and increased earning power of defendant.

Reading the trial court’s Order as a whole, it is reasonable to conclude the trial court

relied on the same findings it used to distribute the parties’ property as it did to

determine defendant’s eligibility for alimony, as both required the court to consider

similar factors and were ruled upon in the same Order. See N.C. Gen. Stat. §§ 50-20,

50-16.3A(b)-(c) (2017). Accordingly, we hold the trial court’s findings of fact were

sufficient to meet the requirements of N.C. Gen. Stat. § 50-16.3A.

 The dissent, citing to Williams v. Williams, 299 N.C. 174, 261 S.E.2d 849

(1980), asserts the life insurance proceeds should not disqualify defendant from

receiving alimony because the law does not require she support herself through estate

 - 17 -
 CRAGO V. CRAGO

 Opinion of the Court

depletion. However, the dissent ignores the context in which the insurance proceeds

were used to support the trial court’s decision to deny alimony. The Williams court

held that “the trial court consideration of the ‘estates’ of the parties is intended

primarily for the purpose of providing it with another guide in evaluating the

earnings and earning capacity of the parties, and not for the purpose of determining

capability of self-support through estate depletion.” Id. at 184, 261 S.E.2d at 856.

Looking at the trial court’s findings as a whole, it becomes clear the trial court did

consider the life insurance proceeds the way Williams intended—as a way to evaluate

the earnings and earning capacity of defendant. The trial court found defendant had

substantial unearned income from the life insurance proceeds, and also that she “has

the ability to earn substantial income.” These findings were supported by competent

evidence, including defendant’s own testimony that she periodically sent out some job

applications and was confident she would get a job opportunity soon. Accordingly,

the trial court did not, as the dissent argues, simply disqualify defendant from

receiving alimony based solely on her ability to support herself through estate

depletion.

 We also hold the trial court properly denied defendant’s request for attorney’s

fees. “We [have] interpreted [N.C. Gen. Stat. § 50-16.4 (2017)] to require that ‘[a]

spouse is entitled to attorney’s fees if that spouse is (1) the dependent spouse, (2)

entitled to the underlying relief demanded (e.g., alimony and/or child support), and

 - 18 -
 CRAGO V. CRAGO

 Opinion of the Court

(3) without sufficient means to defray the costs of litigation.’ ” Friend-Novorska v.

Novorska, 163 N.C. App. 776, 777-78, 594 S.E.2d 409, 410 (2004) (quoting Barrett,

140 N.C. App. at 374, 536 S.E.2d at 646). “Whether the moving party meets these

requirements is a question of law fully reviewable de novo on appeal.” Id. at 778, 594

S.E.2d at 410 (citing Hudson v. Hudson, 299 N.C. 465, 473, 263 S.E.2d 719, 724

(1980)).

 Here, defendant was found not to be dependent, was not entitled to alimony,

and also had sufficient means to bear the cost of litigation using the life insurance

proceeds. Accordingly, the trial court’s denial of defendant’s request for attorney’s

fees was proper.

 III. Conclusion

 For the foregoing reasons, we affirm the Order of the trial court.

 AFFIRMED.

 Judge ZACHARY concurs.

 Judge HAMPSON concurs in result in part and dissents in part by separate

opinion.

 - 19 -
No. COA18-1304 – Crago v. Crago

 HAMPSON, Judge, concurring in result in part and dissenting in part.

 I concur in the result reached by the majority on the Equitable Distribution

claim. I dissent from the majority opinion on the Alimony claim. Both of these

conclusions stem from the trial court’s treatment of the proceeds from the life

insurance policy insuring the life of Defendant’s first husband.

 I.

 The trial court classified the proceeds of a life insurance policy, which insured

Defendant’s first husband and was intended to provide familial support for her and

the children from that prior marriage, as marital property belonging to the marital

estate and distributed $120,000 from those proceeds to Plaintiff, Defendant’s second

husband. In affirming the trial court, the majority adopts what it terms a

“mechanistic” approach to classification of these proceeds. In actuality, the majority

simply applies the standard statutory analysis applicable to other assets acquired

during the marriage using a traditional source of funds methodology.

 The limited scenario presented by this case, however, may well cry out for

application of the “analytic” method. Indeed, there are both practical and policy

reasons for allowing a spouse to retain as her separate property insurance proceeds

arising from the dissolution of a prior marriage intended to support her and the

children from that prior marriage. This would be so notwithstanding the fact funds

from the subsequent marriage contributed to the payment of the insurance
 CRAGO V. CRAGO

 Hampson, J., concurring in result in part and dissenting in part

premiums. See Finkel v. Finkel, 162 N.C. App. 344, 348, 590 S.E.2d 472, 475 (2004)

(applying analytical approach to disability insurance benefits and noting the

“monthly benefits do not lose their classification as separate property because the

source of the premiums was marital”). Under our existing case law, had Defendant’s

first husband not died until after her separation from Plaintiff, the opposite result

may have been reached and the insurance proceeds classified as Defendant’s separate

property; again, notwithstanding the fact marital funds contributed to the payment

of the premiums. See Foster v. Foster, 90 N.C. App. 265, 267, 368 S.E.2d 26, 28 (1988).

 It appears undisputed in this case the existence of the insurance policy was the

result of arrangements Defendant made with her first husband to ensure, in the event

of his death, she and the children from that marriage would be financially protected

and have an independent source of support. It surely was not originally intended to

provide a six-figure, lump-sum payment to Defendant’s next husband. Moreover, it

is evident there was a clear expectation and agreement between Plaintiff and

Defendant that during their marriage their marital funds would be used to pay, in

part, the premiums for this policy.

 Here, though, the evidence also supports a determination the insurance

proceeds—acquired during the marriage partially from the use of marital funds to

pay the premiums—were also intended, in whole or part, to be contributed to the

marital estate and applied to marital obligations. In the absence of evidence

 2
 CRAGO V. CRAGO

 Hampson, J., concurring in result in part and dissenting in part

sufficient to trace out what share of the proceeds should be marital and separate, the

presumption remains property acquired during the marriage is marital. Thus, in

that regard, it was reasonable for the trial court to classify the entirety of the proceeds

as marital property and, then, in the distribution phase take the nature of these

insurance proceeds into account as a significant factor in its distribution. This the

trial court did in awarding Defendant an 80/20 unequal distribution. On the facts of

this case, this was not an abuse of discretion, and I concur in the result reached by

the majority affirming the trial court’s Equitable Distribution award.

 II.

 I do, however, disagree with the majority on the decision to affirm the denial

of Alimony and attorneys’ fees. The trial court concluded Defendant was not a

dependent spouse because she was awarded the balance of the life insurance proceeds

and, in the trial court’s view, this provided her with a source of support such that she

was not in need of maintenance or support from Plaintiff. In my view, this runs

directly contrary to a central tenet of our Supreme Court’s decision in Williams v.

Williams. The ruling in Williams v. Williams remains the governing standard for

determining whether a spouse is actually substantially dependent or substantially in

need of maintenance and support. See 299 N.C. 174, 183, 261 S.E.2d 849, 856 (1980).

Williams was decided under the pre-1995 alimony statute providing for “fault-based”

alimony, and “on 1 October 1995, this fault-based approach was replaced by a need-

 3
 CRAGO V. CRAGO

 Hampson, J., concurring in result in part and dissenting in part

based alimony statute.” Alvarez v. Alvarez, 134 N.C. App. 321, 323, 517 S.E.2d 420,

422 (1999). Nevertheless, our Courts continue to look to Williams to guide the

economic analysis for purposes of determining entitlement to alimony. See, e.g.,

Crocker v. Crocker, 190 N.C. App. 165, 171, 660 S.E.2d 212, 216 (2008) (applying

Williams to determine whether the trial court made findings supporting its

conclusion of dependency).

 In making a dependency determination, the relevant Williams factors include:

 (1) the accustomed standard of living of the parties prior to the
 separation, (2) the income and expenses of each of the parties at
 the time of the trial, (3) the value of the estates, if any, of both
 spouses at the time of the hearing, and (4) “the length of [the]
 marriage and the contribution each party has made to the
 financial status of the family over the years.”

Hunt v. Hunt, 112 N.C. App. 722, 726-27, 436 S.E.2d 856, 859 (1993) (quoting

Williams, 299 N.C. at 183-85, 261 S.E.2d at 856-57). “The conclusions made by the

court as to whether a spouse is ‘dependent’ or ‘supporting’ must be based on findings

of fact sufficiently specific to indicate that the court properly considered the factors

set out in Williams.” Talent v. Talent, 76 N.C. App. 545, 548, 334 S.E.2d 256, 259

(1985).

 As it relates to the consideration of the parties’ estates, the Supreme Court was

clear:

 The financial worth or “estate” of both spouses must also be
 considered by the trial court in determining which spouse is the
 dependent spouse. We do not think, however, that usage of the

 4
 CRAGO V. CRAGO

 Hampson, J., concurring in result in part and dissenting in part

 word “estate” implies a legislative intent that a spouse seeking
 alimony who has an estate sufficient to maintain that spouse in
 the manner to which he or she is accustomed, through estate
 depletion, is disqualified as a dependent spouse. Such an
 interpretation would be incongruous with a statutory emphasis
 on “earnings,” “earning capacity,” and “accustomed standard of
 living.” It would also be inconsistent with plain common sense.
 If the spouse seeking alimony is denied alimony because he or she
 has an estate which can be spent away to maintain his or her
 standard of living, that spouse may soon have no earnings or
 earning capacity and therefore no way to maintain any standard
 of living.

 We think, therefore, that the trial court consideration of the
 “estates” of the parties is intended primarily for the purpose of
 providing it with another guide in evaluating the earnings and
 earning capacity of the parties, and not for the purpose of
 determining capability of self-support through estate depletion.
 We think this is equally true in giving consideration to the estate
 of the alleged supporting spouse. Obviously, a determination that
 one is the supporting spouse because he or she can maintain the
 dependent spouse at the standard of living to which they were
 accustomed through estate depletion could soon lead to inability
 to provide for either party.

Williams, 299 N.C. at 183-84, 261 S.E.2d at 856 (emphasis omitted). The Court went

on to hold the General Assembly “did not intend that one seeking alimony be

disqualified as a dependent spouse because, through estate depletion, that spouse

would be able to maintain his or her accustomed standard of living.” Id. at 185, 261

S.E.2d at 857.

 In this case, however, this is exactly what the trial court did: disqualify

Defendant from alimony simply because, through estate depletion, she may be able

to maintain her accustomed standard of living. The trial court quite plainly found:

 5
 CRAGO V. CRAGO

 Hampson, J., concurring in result in part and dissenting in part

 17) Alimony: Husband is representing himself and the first
 two sentences of his closing argument was “how is she [Wife]
 dependent upon me if she has a $1,000,000.00” The Court
 agrees with Husband. Wife does not have all of the
 $1,000,000.00 but she has $777,851.00 from this
 distribution. Though Husband was earning money during
 the marriage, part of Wife’s complaint is that Husband was
 not supporting her during marriage. Nevertheless, Wife got
 the life insurance proceeds and had them at her disposal of
 over a $1,000,000.00 while they were still married, kept
 them and had access and use of those proceeds in any
 investments she that she [sic] could have yielded from those
 proceeds after the date of separation. The Court finds that
 she is not a dependent spouse as of the date of trial, which is
 the date that it is determined and therefore the Court does
 not award alimony.

Based on this finding, the trial court concluded Defendant’s Alimony claim should be

denied.1 This conclusion was error, and I would vacate the denial of Alimony and

remand the matter to the trial court for reconsideration of its Alimony decision. I

would therefore also vacate the denial of attorneys’ fees related to Defendant’s

Alimony claim and remand that issue for further consideration.

 1 I do not, as the majority claims, ignore the context in which the trial court used the insurance
proceeds. To the contrary, Finding of Fact 17—the only finding expressly addressing Alimony—speaks
for itself and is perfectly clear in explaining exactly how the trial court used these proceeds in denying
Alimony. The additional findings the majority uses to bolster its analysis are contained within the
trial court’s Equitable Distribution analysis under the heading: “The distributional factors applied by
the Court[.]” See N.C. Gen. Stat. § 50-20(f) (2017) (“The court shall provide for an equitable
distribution without regard to alimony . . . .”). In Equitable Distribution, after requiring Defendant to
pay Plaintiff $120,000, the trial court distributed the balance of the insurance proceeds to Defendant.
Based solely on this fact, and without any other consideration, the trial court denied Defendant
alimony. This was error.

 6
 CRAGO V. CRAGO

 Hampson, J., concurring in result in part and dissenting in part

 Consequently, I would affirm the trial court’s decision as to Equitable

Distribution and vacate and remand the Alimony portion of the trial court’s Order.

Accordingly, I respectfully concur in the result in part and dissent in part.

 7